[Crim. No. 17450. In Bank. July 31, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
JACK VANN et al., Defendants and Appellants.

## COUNSEL

G. Kip Edwards, under appointment by the Supreme Court, Lascher & Rader, Edward L. Lascher and Richard E. Rader for Defendants and Appellants.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, W. Eric Collins and Eugene Kaster, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WRIGHT, C. J.**—Defendants appeal from orders granting probation after jury verdicts finding them guilty of receiving stolen property. (Pen. Code, § 496.)[1] They contend, inter alia, that the trial court prejudicially erred

---

[1] Unless otherwise specified; all statutory references are to sections of the Penal Code.

Defendants Fowler and Vann were charged by indictment in action No. 6409 with receiving a four-inch .38 caliber revolver which had been stolen. Fowler was additionally charged by information in action No. 6436 with one count of receiving stolen

when it failed to instruct the jury on the prosecution's burden to prove guilt beyond a reasonable doubt. We conclude that the contention is meritorious and reverse the orders.

In July 1970 11 handguns were stolen from the residence of a gun collector during the course of a burglary. The following month Peter Brambini purchased three handguns from a stranger and, in the same month, sold or pawned them to defendant Vann for $50. In September Vann delivered the guns to defendant Fowler for safekeeping.

In October an undercover police officer met with Vann and proposed to purchase a gun for a purported illegal purpose. He was invited into Vann's automobile where he was advised that the guns in Vann's possession were "hot."[2] Vann then drove to the bail bond office of Fowler. When Vann was satisfied that only Fowler and his wife were present in the office, he asked Fowler to bring in "those guns." Fowler left the room and returned with a bag containing several guns, from which the officer selected a .38 caliber revolver. After bargaining with Vann he settled on a purchase price of $65 and took possession of the weapon. The gun purchased by the officer was one of the guns stolen from the residence of the gun collector in July.[3]

In November police searched Fowler's home and office pursuant to a search warrant. In a bag under Fowler's bed they found a .45 caliber pistol and a .38 caliber revolver, both of which had been stolen from the residence of the gun collector in July.

Vann, upon his arrest on the same day as the search of Fowler's premises and after being duly advised of his constitutional rights to counsel and to remain silent, described the circumstances of his purchase of guns from Brambini in August. He stated that Brambini and a companion, variously

---

property consisting of a .45 caliber pistol and a six-inch .38 caliber revolver. The actions were consolidated for trial by jury. Following a 10-day trial both defendants were found guilty as charged. Defendants were represented at trial by separate counsel.

[2] Refreshing his recollection from written notes which he stated he had made within two hours of the occurrences, the officer testified as follows: "Vann stated, 'I want you to know out front that all my guns are hot. But I guess that wouldn't matter with what you want it for.' I replied, 'I don't want to register it, that's for damned sure.' Vann stated, 'What kind do you want?' I replied, 'A thirty-eight, if you have any.' He stated, 'I have two thirty-eights, a forty-five, a three-eighty, a forty-four Mag and a twenty-two, and they are all new.' I replied, 'How far do we have to go?' He stated, 'Right next to the police station.' And I stated, 'Man, are you out of your rabbit ass mind?' And Mr. Vann started laughing, he says, 'No, man. It's the safest place in town.'"

[3] During the time the officer was in Fowler's presence, Fowler remarked that he had a "safe full of hot watches and rings that belonged to Jack [Vann]." As the officer left the premises, Fowler told him, "Mum's the word."

described on different occasions by Vann, pawned the guns for a $35 loan. When Brambini did not return to redeem the guns Vann concluded that they were stolen. Vann also acknowledged that he had told the undercover officer that the gun purchased by the latter could be "hot."

Both defendants testified at the trial. In partial contradiction of the foregoing account, Vann denied that he told the police officer that the guns were stolen and maintained that he stated only that he did not know whether the guns were stolen. He conceded that he suspected that they may have been stolen when Brambini did not return to redeem them, but he claimed that he did not convey his suspicions to the police officer. Vann also testified that he dealt not with Brambini but with Brambini's companion and that six, not three, guns were pawned for the $35 loan.

Fowler denied any knowledge that the guns delivered to him by Vann were stolen. He also testified, and in this respect he was corroborated by Vann, that he did not inform the officer that he had a safe filled with "hot" watches and rings belonging to Vann. Fowler conceded that he may have said "Mum's the word" when the officer left.

The initial contention with which we deal is that the verdicts are not supported by substantial evidence. ■ In order to establish the commission of the crime of receiving stolen property it must be established by substantial evidence (1) that the particular property was stolen, (2) that the accused received, concealed or withheld it from the owner thereof, and (3) that the accused knew the property was stolen. (*People* v. *Stuart* (1969) 272 Cal.App.2d 653, 656 [77 Cal.Rptr. 531]; *People* v. *Siegfried* (1967) 249 Cal.App.2d 489, 493 [57 Cal.Rptr. 423].) It is manifest that the first two of the three elements of the crimes are conclusively established and defendants do not contend otherwise. It is urged, however, as to the third element, that the evidence falls short of establishing actual knowledge that the guns were stolen.

■ Knowledge that property was stolen can seldom be proved by direct evidence and resort must often be made to circumstantial evidence. However, no distinction is made between direct and circumstantial evidence in the degree of proof required. (*People* v. *Stuart, supra,* 272 Cal.App.2d 653, 656.) "Possession of recently stolen property is so incriminating that to warrant conviction there need only be, in addition to possession, slight corroboration in the form of statements or conduct of the defendant tending to show his guilt. [Citations.]" (*People* v. *McFarland* (1962) 58 Cal.2d 748, 754 [26 Cal.Rptr. 473, 376 P.2d 449].)

■ There is abundant corroboration in the instant case as will appear from the following summary: the guns in question were acquired at a grossly inadequate price (see *People* v. *Clausen* (1898) 120 Cal. 381, 382-383 [52 P. 658]; *People* v. *Malouf* (1955) 135 Cal.App.2d 697, 706 [287 P.2d 834]); the weapons were concealed by both Vann and Fowler (see *People* v. *Gould* (1952) 111 Cal.App.2d 1, 6 [243 P.2d 809]); both defendants engaged in furtive conduct when dealing with the undercover officer; conflicts were present in Vann's several accounts of his acquisition of the property (see *People* v. *Roberts* (1960) 182 Cal.App.2d 431, 436 [6 Cal.Rptr. 161]); most significantly, Vann told the undercover police officer that the guns were "hot," and acknowledged to other officers at the time of his arrest that he had concluded that the guns were stolen. He even testified that he suspected that they may have been stolen. Fowler, of course, maintained possession of contraband delivered to him by Vann and, according to the undercover officer, described some of it as "hot."[4]

■ In reviewing a judgment of conviction, an appellate court, of course, must view the evidence in the light most favorable to the People and presume in support of that judgment the existence of every fact the trier could reasonably deduce from the evidence. (*People* v. *Sweeney* (1960) 55 Cal.2d 27, 33 [9 Cal.Rptr. 793, 357 P.2d 1049].) The test is whether there is substantial evidence to support the conclusion of the trier of fact (*People* v. *Redmond* (1969) 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321]), and we conclude that there is such evidence.

We do not hold herein that, as a matter of law, the jurors were *required* to find on the conflicting evidence that defendants had knowledge that the guns in their possession were stolen. For example, had the jurors elected to disbelieve the testimony of the undercover officer whose credibility had been attacked by defendants, they might have concluded, particularly as to Fowler, that the prosecution had not carried its burden of proving such necessary element beyond a reasonable doubt. The defendants thus were entitled to have the jurors fully instructed as to their responsibility in making their findings. Any material failure to give such instructions would constitute reversible error.

■ Apparently through inadvertence the trial court failed to include in its charge to the jury any specific instruction that the defendants were presumed to be innocent and that the prosecution had the burden of proving their guilt beyond a reasonable doubt. (See CALJIC No. 2.90 (3d rev.

---

[4] The trial court carefully limited the application of evidence of extrajudicial admissions made by one of the defendants out of the presence of the other.

ed. 1970).) This basic principle is declared in section 1096.[5] ■ Even though no such instruction is requested, the court must nevertheless instruct *sua sponte* on those general principles of law which are closely and openly connected with the facts and are necessary for the jury's understanding of the case. (*People* v. *St. Martin* (1970) 1 Cal.3d 524, 531 [83 Cal.Rptr. 166, 463 P.2d 390].)

Citing *People* v. *Soldavini* (1941) 45 Cal.App.2d 460, 463 [114 P.2d 415] and *People* v. *Benjamin* (1970) 3 Cal.App.3d 687, 699 [83 Cal.Rptr. 764], the People contend, however, that the failure to give the standard instruction is not prejudicial error where the point is otherwise covered and the jury is aware that the People are required to prove the defendants guilty beyond a reasonable doubt. In support of their proposition the People rely on an instruction on circumstantial evidence by which the jurors were told they could not find defendants guilty "based on circumstantial evidence unless the proved circumstances are not only consistent with the theory that the defendant is guilty of the crime, but cannot be reconciled with any other rational conclusion and each fact which is essential to complete a set of circumstances necessary to establish a defendant's guilt has been proved beyond a reasonable doubt." Although the foregoing instruction states, albeit indirectly, that an accused cannot be convicted on circumstantial evidence except where such evidence proves the issue beyond a reasonable doubt, it fails to tell the jurors that a determination of guilt resting on direct testimony must also be resolved beyond a reasonable doubt.

The prosecution in the instant case depended in large part on direct evidence, the testimony of the undercover officer and the resolution of the conflict between such testimony and that of defendant as to what occurred in Fowler's office. An instruction which requires proof beyond a reasonable doubt only as to circumstantial evidence, rather than importing a need for the same degree of proof where the crime is sought to be established

---

[5]Section 1096 provides: "A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to an acquittal, but the effect of this presumption is only to place upon the state the burden of proving him guilty beyond a reasonable doubt. Reasonable doubt is defined as follows: 'It is not a mere possible doubt; because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case, which, after the entire comparison and consideration of all the evidence, leaves the minds of jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge.' "

Section 1096a provides: "In charging a jury, the court may read to the jury section 1096 of this code, and no further instruction on the subject of the presumption of innocence or defining reasonable doubt need be given."

by direct evidence, might with equal logic have been interpreted by the jurors as importing the need of a lesser degree of proof where the evidence is direct and thus of a higher quality.

The jury was also instructed that "evidence of good character may be sufficient to raise a reasonable doubt whether a defendant is guilty, which doubt otherwise would not exist." Although the jury heard both favorable and adverse testimony regarding the character of the defendants, this instruction did not expressly tell them that a reasonable doubt based upon such testimony would necessitate acquittal nor did it assist them in evaluating issues or conflicts other than character.

■ The foregoing references to reasonable doubt in isolated applications of that standard of proof fall far short of apprising the jurors that defendants were entitled to acquittal unless each ·element of the crimes charged was proved to the jurors' satisfaction beyond a reasonable doubt buttressed by additional instructions on the meaning of that phrase.[6] "No instruction could be more vital . . . , since in every criminal case it directs the jury to put away from their minds [*sic*] all suspicions arising from arrest, indictment, arraignment, and the appearance of the accused before them in his role as a defendant." (*People* v. *Morris* (1968) 260 Cal.App.2d 848, 850 [67 Cal.Rptr. 566].)

■ The reasonable-doubt standard of proof in criminal proceedings is now recognized as rooted in the federal Constitution. "Lest there remain any doubt about the constitutional stature of the reasonable-doubt stand-

---

[6]The failure to instruct is likewise not cured by other directions given to the jury. Thus the jury panel was instructed prior to the selection of jurors that it would be "incumbent . . . upon the People to prove the allegations as to each defendant, and to prove them beyond a reasonable doubt, to a moral certainty, before you would be entitled to return a guilty verdict." However, the court immediately thereafter instructed that "At the conclusion of the evidence in the case the court will give you instructions on the law as it relates to the evidence." Final instructions were not given to the jury until 16 days later. At that time the court did not refer back to its preliminary remarks made before the selection of the jurors, and stated, "it is my duty to instruct you on the law that applies to this case, and *you must follow the law as I state it to you*." (Italics added.) Toward the end of the charge the court concluded, "You have been instructed on all the rules of law that may be necessary for you to reach a verdict." In net effect the jurors were given to understand that they had received a self-contained, complete statement of the law they were to follow. Although counsel for defendants, in their closing arguments, also advised the jurors that in order to bring in guilty verdicts they were required to find the elements of the crimes beyond a reasonable doubt, this likewise did not cure the error of the court's omission. (See *Parker* v. *Atchison, T. & S. F. Ry. Co.* (1968) 263 Cal.App.2d 675, 680 [70 Cal.Rptr. 8].) In its final charge the court made it clear that the jurors were to follow the law as explained by the court, and were not to follow rules of law stated in argument but omitted from the instructions.

ard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." (*In re Winship* (1970) 397 U.S. 358, 364 [25 L.Ed.2d 368, 375, 90 S.Ct. 1068].) ▮ Because on a review of the entire record we cannot declare a belief that the omission of the vital instruction was harmless beyond a reasonable doubt (*Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065]), the error must be deemed to be prejudicial.

Defendants also complain of other instructions and of the failure to secure the attendance of a defense witness. Because it is not likely that the circumstances giving rise to such claimed error will recur on retrial we decline to discuss them.

The orders are reversed.

Tobriner, J., Mosk, J., Burke, J., Sullivan, J., and Clark, J., concurred.

McComb, J., dissented.