[No. A054171. First Dist., Div. Three. Aug. 19, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSE ELGUERA, Defendant and Appellant.

## COUNSEL

Steven Fama, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Ronald S. Matthias and Jeremy Friedlander, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WERDEGAR, J.**—Jose Elguera appeals his conviction for possessing a sharp instrument while confined in state prison (Pen. Code, § 4502).[1] He seeks reversal on the ground the trial court omitted the standard instruction on the presumption of innocence and the prosecution's burden of proof beyond a reasonable doubt (CALJIC No. 2.90 (5th ed. 1988 bound vol.))[2] from its predeliberation charge to the jury. Although many of the circumstances in this case suggest the jury, at the deliberation stage, was aware of the presumption of innocence and the prosecution's burden of proof beyond a reasonable doubt, we are not persuaded the court's failure to repeat CALJIC No. 2.90 in the final charge was harmless beyond a reasonable doubt. (*Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824, 24 A.L.R.3d 1065]; *People* v. *Vann* (1974) 12 Cal.3d 220, 228 [115 Cal.Rptr. 352, 524 P.2d 824].) Rather, we conclude there is a reasonable possibility the omission left one or more jurors without a sufficiently clear definition of "reasonable doubt" against which to measure the doubts that could have been raised by the defense case. We therefore reverse the conviction.

### FACTS

While defendant was an inmate at Pelican Bay State Prison, a correctional officer searched his clothes and found, in one of his pockets, a razor blade

---

[1] All further statutory references are to the Penal Code.
[2] All further CALJIC references are to the fifth edition 1988 bound volume.

wrapped in yellow paper. The paper was wrapped tightly around the blade 15 to 20 times and secured with tape. The blade was not protruding from the paper, but metal was visible if the packet was viewed from one end.

Defendant testified he saw what appeared to be a "kite"—a prisoner's note written on a small folded piece of paper—lying on the floor just outside the dining hall door. He picked it up and immediately, without examining it, put it in his pocket, intending to read it when he returned to his cell. He had no idea it contained a razor blade. He knew a razor blade taken from a state-issued razor would be contraband; he would not have picked up the packet if he had known there was a blade in it.

A correctional officer testified in rebuttal that he was in the control booth at the time defendant claimed to have picked up the packet, that one of the areas under his observation was the entrance to the dining hall, that a yellow packet would have been quite noticeable against the gray cement floor, and that he did not see anyone reach down and pick up such an object. On cross-examination, he admitted he was not watching that particular area the entire time.

The entire trial, including jury selection and deliberations, was conducted on April 29, 1991. About 9:30 a.m., before the prospective jurors were questioned, the court addressed them as follows:

"[I]t is charged that the defendant on August the 6th of 1990 committed a violation of section 4502 of the California Penal Code, which is possession of a weapon or sharp instrument by a state inmate; and to this charge, the defendant has entered a plea of not guilty, which is a complete denial of the offense, placing upon the people the burden of proving, if they can, his guilt beyond a reasonable doubt. And, of course, lacking such proof, he is entitled to an acquittal.

"So that you understand what proof beyond a reasonable doubt is, I'm going to read to you now an instruction. As we go through the questioning process, I'll ask you individually whether you understand it. *A defendant in a criminal action is presumed to be innocent until the contrary is proved; and in case of a reasonable doubt whether his guilt is satisfactory [sic] shown, he is entitled to an acquittal.*

"*This presumption places upon the state the burden of proving him guilty beyond a reasonable doubt. Reasonable doubt is defined as follows: It is not a mere possible doubt because everything relating to human affairs and depending on moral evidence is open to some possible or imaginary doubt. It is that*

*state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction to a moral certainty of the truth of the charge.*

"So if I ask you, 'Do you understand the requirement of proof beyond a reasonable doubt,' what I've just read is what that refers to." The portion of this speech to which we have added emphasis is the full text of CALJIC No. 2.90.

During voir dire, the court asked each of the prospective jurors whether he or she understood the requirement of proof beyond a reasonable doubt. Each of the jurors who served answered affirmatively.

The court did not repeat CALJIC No. 2.90 in its predeliberation charge to the jury. Nor was the written instruction included in those provided to the jury. The court did instruct the jury, with CALJIC No. 2.01, on the use of circumstantial evidence: "[A] finding of guilt as to any crime may not be based on circumstantial evidence unless the proved circumstances are not only, one, consistent with the theory that the defendant is guilty of the crime; but, two, cannot be reconciled with any other rational conclusion. [¶] Further each fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt must be proved beyond a reasonable doubt. [¶] In other words, before an inference essential to establish guilt may be found to have been proved beyond a reasonable doubt, each fact or circumstance upon which such inference necessarily rests must be proved beyond a reasonable doubt. . . ."

The court described the predeliberation charge as "the law that applies to this case" and told the jury to "apply the law that I state to you . . . ." The jury was also told that if anything in the arguments of counsel conflicted with the court's instructions, it was to follow the instructions. The court also cautioned the jury not to be influenced by the fact defendant had been arrested, charged or brought to trial: "None of these circumstances is evidence of guilt . . . ." Finally, the court stated the prosecutor would give the first argument because he "has the burden of proof."

Both attorneys acknowledged the allocation and standard of the burden of proof in their arguments to the jury. The prosecutor opened by describing a chart he had made as displaying "what the People must prove and what the evidence does prove beyond a reasonable doubt." He then briefly noted the People had proven jurisdiction "beyond a reasonable doubt," and defendant's prison confinement was proven "beyond a reasonable doubt. Any doubt,

much less a reasonable doubt." Addressing the disputed elements of the crime, he stated that "[w]e" have to prove knowing possession and control of the sharp instrument, and the jury had to decide "whether you feel beyond a reasonable doubt that the defendant, this defendant, knowingly possessed or controlled a sharp instrument . . . ." In his rebuttal argument, the prosecutor once again reminded the jury, "you're the ones that decide whether this evidence is proven beyond a reasonable doubt."

Defense counsel agreed with the prosecutor that defendant's knowledge of the sharp instrument was the key question and reminded the jury the prosecutor was required to prove "each element of the offense. . . ." On the same topic (the knowledge element), counsel referred to the instruction on circumstantial evidence and argued each fact necessary to an inference of knowledge had to be proven "beyond a reasonable doubt." While the prison disciplinary process may have a lower standard, counsel argued, the burden of proof at trial was "proof beyond a reasonable doubt." He concluded his argument by discussing the circumstantial evidence of knowledge and arguing, "clearly the prosecution of this case has not proved knowingly and—and they just, obviously, haven't proved it beyond a reasonable doubt."

The jury retired to deliberate at 3:08 p.m. and, at 5 p.m., announced it had reached its verdict.

## DISCUSSION

### I. *Standard of Prejudice*

Although the Attorney General does not expressly concede error, he does not attempt to justify the court's failure to include the instruction on the presumption of innocence and proof beyond a reasonable doubt in its charge to the jury. ■ We think it clear the court had a sua sponte duty to instruct the jury on these fundamental principles, applicable to every criminal case; to do so during the trial rather than during jury selection; and to make the instruction available with other written instructions. (*People* v. *Vann, supra*, 12 Cal.3d at p. 226; *People* v. *Morris* (1968) 260 Cal.App.2d 848, 849-851 [67 Cal.Rptr. 566]; *People* v. *Soldavini* (1941) 45 Cal.App.2d 460, 463-464 [114 P.2d 415]; see § 1093, subd. (f) [judge to "charge" the jury after argument, but instructions may also be given as necessary during trial; written instructions to be available upon jury request].) The court's omission thus was error. ■ The first substantial question before us, therefore, is what standard applies to determine whether this error requires reversal.

Our Supreme Court answered this question in *People* v. *Vann, supra*, 12 Cal.3d 220. There, as here, CALJIC No. 2.90 was inadvertently omitted

from the charge, although, as here, an instruction on proof of inferences from circumstantial evidence was given, and, as here, the jury was informed during jury selection of the prosecution's burden of proof beyond a reasonable doubt. (12 Cal.3d at pp. 225-227 & fn. 6.) Finding the error implicated the federal right to due process, the court applied the "harmless beyond a reasonable doubt" standard announced in *Chapman* v. *California*, *supra*, 386 U.S. at page 24 [17 L.Ed.2d 710]. (*Vann*, *supra*, at p. 228.)

Defendant argues the error should be prejudicial per se because it undermines the reliability of the criminal trial process. It may be that a complete failure to acquaint the jury with the presumption of innocence and the standard of proof, or an instruction that misinformed the jury as to the correct standard of proof, would qualify as "structural defects in the constitution of the trial mechanism, which defy analysis by 'harmless-error' standards." (*Arizona* v. *Fulminante* (1991) 499 U.S. __, __ [113 L.Ed.2d 302, 331, 111 S.Ct. 1246, 1265]; see also *id.* at p. __ [113 L.Ed.2d at p. 319, 111 S.Ct. at p. 1255] (conc. opn. of White, J.) [stating omission of reasonable doubt instruction not subject to harmless error analysis]; but see *Kentucky* v. *Whorton* (1979) 441 U.S. 786, 789 [60 L.Ed.2d 640, 643, 99 S.Ct. 2088] [failure to instruct on presumption of innocence not necessarily constitutional error] and *id.* at p. 791 [60 L.Ed.2d at pp. 644-645] (dis. opn. of Stewart, J.) [failure to instruct is constitutional error but may be harmless on *Chapman* standard].) Here, however, we are not faced with a complete failure to instruct or with an instruction that would actually tend to mislead the jury, but rather with a failure to repeat in the final charge an instruction that had been read to the jury before trial. *People* v. *Vann*, *supra*, 12 Cal.3d 220 is indistinguishable in this respect and indicates *Chapman* v. *California*, *supra*, 386 U.S. 18 is the appropriate standard.

The Attorney General, for his part, maintains the appropriate question is whether the instructions created a "reasonable likelihood" the jury would misunderstand the law. The suggested standard, however, and the cases cited to support it do not concern the standard of prejudice for omission of a required instruction from the final charge; rather, "reasonable likelihood" is the standard for determining whether an instruction is impermissibly ambiguous or subject to misinterpretation. (See *People* v. *Haskett* (1990) 52 Cal.3d 210, 230-231 [276 Cal.Rptr. 80, 801 P.2d 323].) No such question is presented here.

## II. *Application of Chapman Standard*

The *Chapman* test is whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained";

otherwise phrased, the test requires reversal if there is a "reasonable possibility" the error might have contributed to the conviction. (*Chapman* v. *California, supra,* 386 U.S. at p. 24 [17 L.Ed.2d at p. 710].)

One can confidently conclude, in the circumstances of this case, that the jurors were not left ignorant of the basic principles that the defendant in a criminal case is presumed innocent and the prosecutor must prove his guilt beyond a reasonable doubt. First, they had heard virtually the full standard instruction on the subject in the morning at the start of jury selection. Second, the reasonable doubt requirement had been repeatedly referred to in the examination of the prospective jurors, and each juror had stated he or she understood it. Third, the final oral and written charge to the jury informed them that inferences from circumstantial evidence had to be proven beyond a reasonable doubt, and, as will be seen, the prosecution's evidence on the crucial disputed issue was entirely circumstantial. Fourth, the court reminded the jury, just before argument, that the prosecutor had the burden of proof and that no inference of guilt was to be drawn from defendant's arrest or placement on trial. Finally, the two attorneys referred to the prosecutor's burden of proof beyond a reasonable doubt at least eight times in argument to the jury.

In these respects, this case is distinguishable from *People* v. *Vann, supra,* 12 Cal.3d 220, in which a similar error was found prejudicial. In *Vann,* the full instruction was not given at jury selection; rather, at that time, the court simply told the jurors it would be " 'incumbent . . . upon the People to prove the allegations as to each defendant, and to prove them beyond a reasonable doubt, to a moral certainty, before you would be entitled to return a guilty verdict.' " (*Id.* at p. 227, fn. 6.) Most important, final instructions were not given until 16 days after jury selection. (*Ibid.*)

While the jury in *Vann* was instructed with the same language on proof of inferences from circumstantial evidence as the jury here, the *Vann* court found that instruction unavailing because "[t]he prosecution in the instant case depended in large part on direct evidence . . . ." (12 Cal.3d at p. 226.) Here, in contrast, the People's evidence on the central disputed issue—defendant's knowledge the packet contained a sharp instrument—was circumstantial. The prosecutor had no direct evidence of defendant's knowledge (such as an inculpatory statement) and had to rely on the manner in which the razor was wrapped and the rebuttal testimony to discredit defendant's version of events. The only direct evidence on the issue was defendant's exculpatory testimony.

The *Vann* court also found defense counsel's mention of the reasonable doubt standard in argument insufficient to cure the instructional omission

because the court had instructed the jurors they were "not to follow rules of law stated in argument but omitted from the instructions." (12 Cal.3d at p. 227, fn. 6.) Here, the jurors were told only that, in the event of a *conflict* between the instructions and the arguments, they should follow the instructions. The jurors would not have taken the court's omission of CALJIC No. 2.90 from the final charge as presenting a conflict with counsels' repeated references to reasonable doubt, as the court had given the instruction earlier in the day.

Nor did anything in the final charge to the jury suggest they should ignore the instruction the court had read and questioned them on earlier. In *Vann*, the jurors might well have taken the court's statement they were to follow the law as stated in the charge to mean they should not try to apply whatever they remembered of the court's remarks 16 days earlier at jury selection. (12 Cal.3d at p. 227, fn. 6.) In the present case, however, the court's admonition to "apply the law that I state to you . . . ," and other similar instructions, was unlikely to be interpreted as a command to ignore the reasonable doubt and presumption of innocence instruction that had been read and discussed that morning and to which both attorneys repeatedly referred.

Despite the foregoing respects in which the potential prejudice was less here than in *Vann*, we are, in the final analysis, unable to declare ourselves convinced beyond a reasonable doubt the error had no effect on the verdict. Three reasonable possibilities of prejudice suggest themselves.

First, the instruction was given not to actual jurors, but to prospective jurors who at the time did not know whether they would ultimately serve in the case. As a result, the members of the panel could well have viewed the court's remarks as hypothetical and thus have failed to give the instruction the same focused attention they would have had they been impaneled and sworn.

Second, because the court made no reference to the presumption of innocence and the general reasonable doubt standard with its charge to the jury after presentation of the evidence, any intellectual awareness the jurors had that the reasonable doubt standard applied may not have been accompanied by the sense of centrality and importance the instruction should carry. "[T]he reasonable doubt instruction more than any other is central in preventing the conviction of the innocent." (*People* v. *Brigham* (1979) 25 Cal.3d 283, 290 [157 Cal.Rptr. 905, 599 P.2d 100].) "It is critical that the moral force of the criminal law not be diluted by a standard of proof that leaves people in doubt whether innocent men are being condemned." (*In re Winship* (1970) 397 U.S. 358, 364 [25 L.Ed.2d 368, 375, 90 S.Ct. 1068].) If any

phrase should be ringing in the jurors' ears as they leave the courtroom to begin deliberations, it is "proof beyond a reasonable doubt." In the circumstances of this case, the impact of the instruction may have been prejudicially blunted by the passage of time from jury selection to deliberations. Instruction at the conclusion of trial, rather than before, tends to ensure emphasis and prevent confusion. (See *People* v. *Valenzuela* (1977) 76 Cal.App.3d 218, 221 [142 Cal.Rptr. 655] [although court has discretion to instruct at any time during trial, instructions should be repeated in final charge if lapse of time or intervening courtroom events threaten to leave jury confused].)

Third, the jury was not provided, in the oral or written charge, any *definition* of reasonable doubt. The jurors were unlikely to remember the exact definition read to them five and one-half hours earlier, and neither the instruction on circumstantial evidence nor the arguments of counsel, both of which employed the phrase, explained the meaning of "reasonable doubt." If a juror had any question as to its meaning, there was nothing in the oral or written charge to enlighten him or her. (Cf. *People* v. *Vann, supra,* 12 Cal.3d at p. 227.)

Even assuming, therefore, the jurors applied a standard of "proof beyond a reasonable doubt," it is impossible to know whether the effective lack of a definition of the standard affected their application of it. The definition contained in CALJIC No. 2.90 is endorsed by statute (§ 1096), as is its employment in a jury instruction (§ 1096a). Departures from its language have repeatedly been deemed error. (See *People* v. *Garcia* (1975) 54 Cal.App.3d 61, 63-66 [126 Cal.Rptr. 275] [reviewing cases]; see also *Cage* v. *Louisiana* (1990) 498 U.S. 39, 41 [112 L.Ed.2d 339, 342, 111 S.Ct. 328, 329-330] [definition using phrases " 'actual substantial doubt' " and " 'grave uncertainty' " held unconstitutional].) Granting the imperfection of its construction and the obscurity of some of its language (see *People* v. *Brigham, supra,* 25 Cal.3d at pp. 295-307 (conc. opn. of Mosk, J.)), the definition does, at least, provide the jurors with some additional handholds on the steeps of judgment.

Would any of the jurors have voted to acquit if they had had before them definitional terms such as "abiding conviction" and "moral certainty"? We simply cannot know. Yet the nature of this case made it a reasonable possibility. Defendant's exculpatory version of events was neither physically impossible nor contradicted by any direct evidence. It probably raised *some* doubt in the jurors' minds; the essence of their task was then to decide if those doubts were reasonable, i.e., to assess as closely as possible the strength of the prosecution's circumstantial case. It is at this delicate stage in

deliberations that the precise meaning of "reasonable doubt" is likely to become important to a jury. The possibility cannot be excluded that lack of a definition contributed to the verdict.

### III. *Instruction on Knowledge of Contraband*

■ We briefly address defendant's remaining contention because it may arise on retrial. The trial court instructed the jury: (1) that possession of the sharp instrument was an element of the crime; (2) that actual possession (the only kind at issue) requires "that a person knowingly exercise direct, physical control over a thing"; and (3) that "[t]he word 'knowingly' means with knowledge of the existence of the facts in question." Defendant claims these instructions were insufficient; the jury, he argues, could have convicted if it believed defendant knew he was in possession of "a thing" even if he did not know the thing was a sharp instrument. This contention has no merit. Defendant admitted possession of the yellow paper object. The only "fact[ ] in question" was his knowledge of its character and content. In the context of the case, and taking the instructions as a whole, the only sensible interpretation of the instructions was that defendant could be convicted only if he knew he was in possession of a weapon or sharp instrument; the jury was not reasonably likely to interpret the instructions otherwise.

### DISPOSITION

The judgment of the superior court is reversed.

White, P. J., and Merrill, J., concurred.

Respondent's petition for review by the Supreme Court was denied November 12, 1992. Panelli, J., and Kennard, J., were of the opinion that the petition should be granted.