[EDITORS' NOTE: THIS OPINION IS DEPUBLISHED UPON GRANTING OF PETITION FOR REVIEW. THE OPINION APPEARS BELOW WITH A GRAY BACKGROUND.]
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1492 
OPINION
Anthony Aranda, Jr., appeals a judgment following his conviction of one count of voluntary manslaughter (Pen. Code, [1] § 192, subd. (a)) and one count of actively participating in a criminal street gang (§ 186.22, subd. (a)). Aranda contends the trial court should have read the jury CALJIC No. 2.90[2] on the prosecution's burden of proof and reasonable doubt. Aranda also challenges the trial court's denial of his motion to grant use immunity to a defense witness on grounds that the proposed testimony was clearly exculpatory and essential to his defense.
We conclude, as to count 1, there were adequate jury instructions contained within the original instructions for murder, and lesser included manslaughter *Page 1493 
and the trial court's instructional error was harmless beyond a reasonable doubt. However, as to count 3, we conclude there was no cure for the trial court's error included in the "active participation in a street gang" jury instructions. With regard to count 3, the instructional error was not harmless beyond a reasonable doubt, and thus we reverse the conviction as to that count only. As to the second issue, we conclude that the trial court correctly denied Aranda's motion to grant use immunity to a defense witness.
 FACTUAL AND PROCEDURAL BACKGROUND
On September 10, 2004, Aranda attended a house party in Hemet with Sean Tisdale. A number of attendees were known members of the Southside Criminals street gang. Aranda also was connected to another local street gang called Hemet Trece. At some point in the evening, the eventual victim, Luis Gonzalez, a member of the rival street gang 18th Street, his girlfriend Angela Gonzalez and her older brother Adam Gonzalez left the party without incident. Although several people at the party had given Adam a small amount of money, to buy methamphetamine (meth), Luis and Angela refused to take him to purchase meth and instead they continued home. After they arrived home, unidentified people from the party started making threatening phone calls to their home about the money Adam had collected to buy meth.
Luis, Angela and Adam drove back to the party to return the money. When they arrived, Adam walked directly into the backyard. Almost immediately after, a fight started between Adam and Aranda and that fight precipitated a larger brawl involving a number of people in attendance. Aranda saw Adam carrying a knife and at some point during the chaos Tisdale handed Aranda a gun. During a heated exchange, Aranda pulled out the gun and pointed it at Luis, who was holding a rock. After exchanging words, Luis rushed towards Aranda with the rock before Aranda ultimately shot and killed him. After he shot Luis, Aranda and his friends left the party.
Aranda was arrested on a separate parole violation and after several weeks of questioning and investigation, he was charged with murder, carrying a concealed firearm in a vehicle while being a participant in a street gang and actively participating in a criminal street gang. Count 2, a violation of section 12025, subdivision (b)(3), was later dismissed on the People's motion.
At trial the jury ultimately acquitted Aranda of murder and the section 186.22, subdivision (b)(1) allegation that he committed the crime for the benefit of a street gang. However, the jury did convict him of voluntary manslaughter, found the section 12022.5, subdivision (a) allegation that Aranda used a firearm to be true, and convicted him of active participation in a gang as charged in count 3. Aranda appeals. *Page 1494 
 DISCUSSION I JURY INSTRUCTIONS ON REASONABLE DOUBT
During the jury selection process, the court made various references to the prosecution's burden of proof and the reasonable doubt standard applicable in criminal trials. However, the trial court did not give the standard CALJIC No. 2.90 instruction regarding the prosecution's general burden of proof and reasonable doubt standard as part of its predeliberation instructions.
The trial court did give the jury proper instructions for circumstantial evidence and did include the concept of reasonable doubt in the substantive crimes and allegation enhancements charged in count 1 for murder.
The due process clauses of the Fifth andFourteenth Amendments to the federal Constitution mandate that a defendant can only be convicted if every element of a crime is proven beyond a reasonable doubt. (Sullivan v. Louisiana (1993) 508 U.S. 275, 278
[124 L.Ed.2d 182, 113 S.Ct. 2078].) Likewise, the presumption of innocence is tied to the prosecution's burden to prove a defendant guilty beyond a reasonable doubt solely on the facts proven at trial. (Taylorv. Kentucky (1978) 436 U.S. 478, 483 [56 L.Ed.2d 468, 98 S.Ct. 1930].) If general jury instructions on the presumption of innocence and reasonable doubt are omitted, the totality of the circumstances, including the other jury instructions, must be evaluated to determine whether the defendant received a fair trial. (Kentucky v. Whorton (1979) 441 U.S. 786, 789 [60 L.Ed.2d 640, 99 S.Ct. 2088].)
Trial courts must give jury instructions (CALJIC No. 2.90 is one example), on the presumption of innocence and the burden of the People to prove the defendant's guilt beyond a reasonable doubt. (People v. Vann
(1974) 12 Cal.3d 220, 225-226 [115 Cal.Rptr. 352, 524 P.2d 824].) Isolated or limited references to the standard of proof are not adequate to instruct jurors that defendants should be acquitted unless each element of a crime was proven beyond a reasonable doubt. (Id. at p. 227.) Failure to give such instructions constitutes a violation of the federal Constitution unless other instructions given to the jury cure the error. Neither trial court instructions during jury selection nor closing arguments of counsel, without more, are ordinarily enough to cure such an instructional error. (12 Cal.3d at p. 227, fn. 6.)
When the trial court instructs the jury, at a minimum, that the prosecution must prove its case beyond a reasonable doubt and the definition of that *Page 1495 
standard is appropriate, then failure to give the standard burden of proof instruction such as CALJIC No. 2.90, is not per se reversible error. (People v. Flores (2007) 147 Cal.App.4th 199, 211 [54 Cal.Rptr.3d 98] (Flores).) Rather, we review the record to determine if the error was "harmless beyond a reasonable doubt." (Chapman v.California (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824] (Chapman).) To determine whether the error in this particular case warrants reversal, it is instructive to evaluate the pretrial instructions and the predeliberation instructions as to each substantive charge.
 A. Pretrial Instructions
During the second day of the jury selection process, the trial court gave the jury general pretrial instructions regarding the prosecution's burden to prove defendant guilty beyond a reasonable doubt for each element of the charged offenses: "[E]ach alleged crime . . . has certain ingredients. And we call those elements. To find one guilty of a crime, whatever it might be . . . you must be convinced of guilt beyond a reasonable doubt as to elements one, two, three, whatever the number is, as to those elements. Okay?"
The trial court repeated these instructions throughout the selection process through question and answer exchanges with individual prospective jurors and with the entire proposed panel. When the jury returned the next day, the trial court continued its discussion of the prosecution's burden of proof and the presumption of innocence again. While these pretrial admonitions, absent extraordinary circumstances, are not enough to satisfy the federal constitutional requirements for the structure of a criminal trial, they should be considered part of the totality of the circumstances when evaluating the adequacy of the instructions. (Flores,supra, 147 Cal.App.4th at p. 211.)
 B. General Predeliberation Instructions
After the defense rested its case the trial court gave the standard jury instructions, using the CALJIC series, but omitted the instructions regarding the prosecution's burden of proof and presumption of innocence contained in CALJIC No. 2.90. However, the trial court did address the prosecution's burden of proof when reading the jurors CALJIC No. 2.01 on circumstantial evidence, explaining: "[E]ach fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt must be proved beyond a reasonable doubt. . . . [B]efore an inference essential to establish guilt may be found to have been proved beyond a reasonable doubt, each fact or circumstance on which the inference necessarily rests must be proved beyond a reasonable doubt." *Page 1496 
 C. Jury Instructions for Count 1
More importantly in analyzing Aranda's assertion of error, the trial court's instructions for murder and its lesser included offenses contained references to the prosecution's burden of proof and the reasonable doubt standard. The trial court read the jury CALJIC No. 8.71 distinguishing the degrees of murder: "If you are convinced beyond a reasonable doubt and unanimously agree that the crime of murder has been committed by Defendant, but you unanimously agree that you have reasonable doubt whether the murder was of the first or second degree, you must give Defendant the benefit of that doubt and return a verdict fixing the murder as of the second degree, as well as a verdict of not guilty of murder in the first degree."
The trial court also read the jurors CALJIC Nos. 8.72, 8.74 and 8.75 on voluntary manslaughter as the lesser included offense if the jury had a reasonable doubt about Aranda's culpability for murder. Those instructions provide as follows:
"If you are convinced beyond a reasonable doubt and unanimously agree that the killing was unlawful, but you unanimously agree that you have a reasonable doubt whether the crime is murder or manslaughter, you must give the defendant the benefit of that doubt and find it to be manslaughter rather than murder." (CALJIC No. 8.72.)
"Before you may return a verdict in this case, you must agree unanimously not only as to whether the defendant is guilty or not guilty, but also, if you should find him guilty of an unlawful killing, you must agree unanimously as to whether he is guilty of murder of the first degree or murder of the second degree or voluntary manslaughter." (CALJIC No. 8.74.)
"If you are not satisfied beyond a reasonable doubt that the defendant is guilty of the crime of first degree murder as charged in Count 1 and you unanimously so find, you may convict him of any lesser crime provided you are satisfied beyond a reasonable doubt that he is guilty of a lesser crime." (CALJIC No. 8.75.)
The trial court also read the jury CALJIC No. 8.50 regarding reasonable doubt and the prosecution's burden to prove the murder charge, and the jury's duty to give Aranda the benefit of the doubt when deciding between murder and voluntary manslaughter: "To establish that the killing is murder and not manslaughter, the burden is on the People to prove beyond a reasonable doubt each of the elements of murder and that the act which caused the death was not done in the heat of passion or upon a sudden quarrel or in the actual, even though unreasonable, belief in the necessity to defend against imminent peril to life or great bodily injury." *Page 1497 
The trial court also read the jury CALJIC No. 5.15 outlining the prosecution's burden to prove beyond a reasonable doubt that the killing was not justifiable or excusable: "Upon a trial of a charge of murder, a killing is lawful if it was justifiable or excusable. The burden is on the prosecution to prove beyond a reasonable doubt that the homicide was unlawful. . . . If you have a reasonable doubt that the homicide was unlawful, you must find the defendant not guilty."
The trial court also read CALJIC No. 8.40 defining voluntary manslaughter and the elements that must be proven, but did not specifically mention the prosecution's burden of proof or reasonable doubt: "There is no malice aforethought if the killing occurred upon a sudden quarrel or heat of passion, or in the actual but unreasonable belief in the necessity to defend oneself against imminent peril to life or great bodily harm. [¶] . . . [¶] In order to prove this crime, each of the following elements must be proved: [¶] One, a human being was killed; [¶] Two, the killing was unlawful; and [¶] Three, the perpetrator of the killing either intended to kill the alleged victim or acted in conscious disregard for life; and [¶] Four, the perpetrator's conduct resulted in the unlawful killing."
Finally, as to the gang and firearm enhancement allegations in count 1, the court also read the relevant CALJIC instructions[3] containing the prosecution's burden of proof and reasonable doubt.
After reviewing the jury instructions pertaining to murder and voluntary manslaughter in count 1, we conclude the sum of the instructions sufficiently relayed the concept of reasonable doubt to the jury. (Victor v. Nebraska (1994) 511 U.S. 1, 5 [127 L.Ed.2d 583,114 S.Ct. 1239]; People v. Mayo (2006) 140 Cal.App.4th 535, 549-550
[44 Cal.Rptr.3d 497].) The court clearly instructed the jury about the prosecution's burden of proof as to murder, and by implication, voluntary manslaughter as the lesser included offense in count 1. Although Aranda points out that the trial court did not reference reasonable doubt explicitly in the definition of manslaughter, the murder instructions gave the jury a clear indication that to convict Aranda of murder or voluntary manslaughter, it would need to find every element in the charge beyond a reasonable doubt. (Mayo, at pp. 546-547.)
Thus, we conclude, under the Chapman standard, the court's error in omitting generalized CALJIC No. 2.90 instruction was cured through subsequent instructions. The jury was given detailed instructions and it is reasonable to infer, from the resulting conviction for voluntary manslaughter, the *Page 1498 
jury understood and applied the correct standard of proof. Therefore, in reviewing the totality of the circumstances, the trial court's omission did not deprive Aranda of a fair trial and therefore the error was harmless beyond a reasonable doubt.
 D. Jury Instructions for Count 3
The same is not true as to the charge of "active participation in a street gang" in count 3. There is no dispute that the court's CALJIC No. 6.50 jury instruction for that specific charge did not include any reference at all to the prosecution's burden of proof or reasonable doubt. In contrast to count 1, the instructions for the substantive charge of active participation in a street gang stood alone without connection to the prosecution's burden or reasonable doubt. The jury was instructed with CALJIC No. 17.24.3 as follows: "Evidence has been introduced for the purpose of showing criminal street gang activities, and of criminal acts by gang members, other than the crimes for which the defendant is on trial. [¶] This evidence, if believed, may not be considered by you to prove the defendant is a person of bad character. . . . It may be considered by you only for the limited purpose of determining if it tends to show that the crime or crimes charged were committed for the benefit of, at the direction of, or in association with a criminal street gang with the specific intent to promote, further or assist in any criminal conduct by gang members. [¶] For the limited purpose for which you may consider this evidence, you must weigh it in the same manner as you do all other evidence in this case."
We have stated that pretrial admonitions could not cure the omission of CALJIC No. 2.90 absent extraordinary circumstances. (Flores, supra,147 Cal.App.4th at p. 215.) Likewise, predeliberation references made in jury instructions for count 1 were also insufficient to inform the jury that Aranda was entitled to acquittal unless the prosecution proved each element beyond a reasonable doubt for count 3. (People v. Vann,supra, 12 Cal.3d at p. 227, fn. 6.) Although the trial court made a reference in the jury instructions to weighing all of the evidence in the same way, indirect references to reasonable doubt cannot meet federal constitutional requirements. "We cannot presume that a reasonable doubt instruction given in a specific context . . . will necessarily be understood by all of the jurors to apply generally to their determination of the defendant's guilt. . . ." (Flores, supra,147 Cal.App.4th at p. 217, original italics.)
As Aranda points out, the jury acquitted him of the correctly instructed commission of a crime for the benefit of a street gang allegation in count 1 but nevertheless found him guilty of the similar charge of active participation in a street gang in count 3. While there is a difference between being an *Page 1499 
active gang member and committing a crime for the benefit of a street gang, and it is possible that the jury would have found Aranda guilty of count 3 if it had been properly instructed, we cannot say that there is no reasonable possibility that the omission of CALJIC No. 2.90 contributed to Aranda's conviction for that count. (Chapman, supra,386 U.S. at p. 23.)
The specific instructions containing references to the prosecution's burden and reasonable doubt read to the jury for the other substantive charges clearly suggest there is more than a reasonable possibility the omission of CALJIC No. 2.90 contributed to Aranda's conviction for count 3. The totality of the circumstances leads us to conclude that under theChapman standard, the trial court's error was not unimportant in comparison to everything else the jury considered and therefore was not harmless beyond a reasonable doubt. For this reason we reverse the conviction as to count 3 only.
 II USE IMMUNITY
Aranda also asserts his convictions should be reversed because the trial court erred in denying his motion to grant use immunity to Tisdale. Aranda contends that Tisdale would have testified that the gun used in the shooting was concealed in his van and Aranda was not aware that Tisdale had a gun. Tisdale would have also testified that he handed the gun to Aranda during the fight and witnessed Luis approach Aranda with a rock before a shot was fired.
Aranda contends that he has a due process right to have clearly exculpatory evidence presented to the jury. (See Government of the VirginIslands v. Smith (3d Cir. 1980) 615 F.2d 964, 970.) It is not clearly established, however, that a trial court has the authority to grant such immunity even in furtherance of a criminal defendant's due process rights. Assuming however that such authority exists, we conclude that the trial court properly denied Aranda's motion. (People v. Stewart (2004)33 Cal.4th 425, 468-469 [15 Cal.Rptr.3d 656, 93 P.3d 271]; People v.Hunter (1989) 49 Cal.3d 957, 973 [264 Cal.Rptr. 367, 782 P.2d 608].)
The test for a judicial grant of use immunity on the basis of a defendant's due process rights contains three elements. The testimony must be clearly exculpatory, it must be essential and there cannot be a strong governmental interest that justifies its exclusion. (People v.Stewart, supra, 33 Cal.4th at p. 469.)
Aranda has not established each of these necessary elements. Here, the expected testimony was not clearly exculpatory or essential. Tisdale's proposed testimony that Aranda acted in self-defense was essentially duplicative *Page 1500 
of Aranda's own testimony that Luis was running towards him with a rock at the time he fired the gun. The jury presumably took Aranda's testimony into account in convicting him of voluntary manslaughter instead of murder. (See People v. Michaels (2002) 28 Cal.4th 486, 529 [122 Cal.Rptr.2d 285, 49 P.3d 1032] [where a defendant kills another in imperfect self-defense, i.e., with the actual but unreasonable belief that deadly force was necessary; he is guilty of voluntary manslaughter rather than murder].)
Tisdale's testimony would not have presented any additional evidence supporting a claim of reasonable self-defense. It would simply be cumulative and nonessential to Aranda's defense. Thus, even if the trial court had power to grant use immunity to Tisdale, it properly denied Aranda's motion because the omitted testimony was not clearly exculpatory or essential for Aranda to present an effective defense.
 DISPOSITION
The judgment is reversed as to count 3. In all other respects the judgment is affirmed.
Nares, J., and Aaron, J., concurred.
[1] All further statutory references are to the Penal Code unless otherwise noted.
[2] CALJIC No. 2.90 provides: "A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether [his or her] guilt is satisfactorily shown, [he or she] is entitled to a verdict of not guilty. This presumption places upon the People the burden of proving [him or her] guilty beyond a reasonable doubt." Reasonable doubt is defined as follows: "It is not a mere possible doubt; because everything relating to human affairs is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction of the truth of the charge." (Ibid.)
[3] CALJIC No. 17.24.2 (Felonies Committed for the Benefit of Street Gangs); CAUIC No. 17.19 (Personal Use of Firearm). *Page 1501