Filed 10/20/15  P. v. Romerosolano CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>NESTOR DANIEL ROMEROSOLANO,<br><br>  Defendant and Appellant. | 2d Crim. No. B258839<br>(Super. Ct. No. 1488216)<br>(Santa Barbara County) |

Nestor Daniel Romerosolano appeals his conviction, by jury, of possession for sale of methamphetamine (Health & Saf. Code, § 11378), receiving stolen property (Pen. Code, § 496, subd. (a))[1], and possession of an injection or ingestion device (Health & Saf. Code, § 11364.1, subd. (a)), a misdemeanor.  The trial court suspended imposition of sentence and granted appellant five years' probation.  At trial, the defense called an expert witness on the question of whether appellant possessed methamphetamine for sale.  The expert was impeached with evidence of his prior felony conviction for grand theft.

---

[1] All statutory references are to the Penal Code unless otherwise stated.

1

Appellant contends that evidence should have been excluded under Evidence Code sections 788 and 352 because the conviction was 26 years old and because the felony was later reduced to a misdemeanor and expunged. He further contends his conviction for receiving stolen property is not supported by substantial evidence. We affirm.

*Facts*

A Lompoc police officer conducted a probation search of two backpacks in appellant's possession. The search disclosed several machetes and knives, two air soft guns, a gas mask and filter, a cell phone in its box, 27 amphetamine pills, a pipe for smoking methamphetamine, a digital scale and 13.5 grams of methamphetamine.

Expert witnesses testified on the question of whether appellant possessed the methamphetamine for sale. The arresting officer, Lompoc police officer John Reyna, testified as an expert witness on narcotics observation and investigation, evaluating persons under the influence, and different types of drugs. He explained the typical behaviors of a person who is under the influence of methamphetamine and testified that, in his opinion, appellant did not exhibit any signs of methamphetamine intoxication when he was arrested. Officer Reyna testified that the difference between a seller and a user of methamphetamine is the quantity of drugs that person possesses. Possession of a scale also indicates intent to sell, in Officer Reyna's opinion, because the scale is used to measure the amount of drugs to be sold. Officer Reyna considered 13.5 grams of methamphetamine, the amount possessed by appellant, to be a large quantity. Appellant also possessed a scale. These two facts caused Officer Reyna to conclude that appellant possessed the methamphetamine for sale. On cross-examination, he conceded that appellant might have possessed the scale not to weigh drugs for sale, but to confirm that he actually received the amount of drugs he paid for.

Andrew White, a narcotics detective employed by the Lompoc police department, also testified as an expert witness. In his opinion, users did not buy methamphetamine in bulk, for fear that it would be stolen or they would be arrested and charged with a more serious offense. White opined that a heavy user in Lompoc would

be someone who used more than 0.2 grams of methamphetamine on a daily basis. The most he was aware of a user ingesting was 2 grams in one day. A seller would be more likely than a user to possess pay-owe sheets, digital scales, cell phones, computers, instant messaging or social media devices, packaging, weapons and a large quantity of drugs. Some users also sell methamphetamine.

White opined that appellant possessed 13.5 grams of methamphetamine for sale rather than for personal use. He based this opinion on his training and experience and on the facts of this case, including the quantity of drugs appellant was found to possess. An average user ingested just 0.1 grams of methamphetamine a day; at that rate, 13.5 grams would last appellant 270 days. White also found appellant's possession of the gas mask significant. It is common for users to trade stolen property for drugs. Other dealers will "front" drugs to their customers. The seller will give the customer enough drugs for the day and the user is expected to return later to pay cash for those drugs. Under that arrangement, the customer leaves property with the seller, as collateral for the later payment. White opined that the gas mask was given in trade for drugs or was collateral for drugs appellant fronted to a customer.

Appellant testified in his own defense. He denied selling drugs and testified he possessed the pipe and methamphetamine for his personal use. Appellant testified he possessed the scale to weigh drugs he bought. He bought in bulk because it was cheaper. Appellant testified that he had knives, machetes, the air soft guns and binoculars because he was planning to go on a camping trip. He got the gas mask from his friend Willie, in repayment of a bar debt. Willie told appellant the gas mask had been a gift from one of his Marine friends. Appellant did not know the gas mask was stolen. He had intended to connect the mask to a "bong" and use it to smoke marijuana.

John Jenks testified as an expert witness on behalf of appellant. Jenks worked as a police officer in Ojai and Port Hueneme from 1975 to 1987. For the final four years of his employment in law enforcement, Jenks worked an undercover narcotics detail and acquired a cocaine addiction. Over a six-month period in 1987, Jenks stole

3

$35,000 worth of cocaine from the property room at the police department. He pled guilty to grand theft and lost his job as a police officer. Jenks testified that, four years later, the conviction was reduced to a misdemeanor and expunged from his record.

Jenks testified he has been sober since 1987 and is now "self-employed as a forensic drug evaluator and as a licensed private investigator." In addition to his law enforcement training, Jenks has an "advanced drug and alcohol counseling skills certification," a bachelor's degree in social work and addiction studies, another bachelor's degree in Christian counseling, and a master's degree in counseling psychology. As a forensic drug evaluator, Jenks interviews "someone who has got a perceived problem" and, after compiling social, psychological and drug use histories, forms opinions about the person's drug use, "use patterns and addiction."

Jenks opined that a person could purchase 13.5 grams of methamphetamine for personal use rather than for sale. A person with a late stage addiction could use that amount in a couple of days. The quantity would fuel a weekend binge for a person who ingested between 3.5 and 7 grams a day; for others, it might last a week or two. A person could also purchase that amount to share with others or to sell. Jenks testified that he was not familiar with packaging and usage of methamphetamine in Lompoc. When presented with a hypothetical question that mirrored the facts of this case, however, Jenks opined the methamphetamine was not possessed for sale.

*Discussion*

*Evidence of Expert Witness' Prior Conviction*

Prior to trial, appellant filed a motion in limine to exclude evidence of Jenks' felony conviction. At the hearing on that motion, the prosecutor informed the trial court that Jenks "was on probation for 60 months. He wasn't granted a pardon, nor a certificate of rehabilitation. It has not been dismissed either. And the People are arguing that this should be allowed in to go to his credibility." Defense counsel stated: "I don't know for certain whether or not the charge or the conviction was Penal Code section 1203.4 expunged. Counsel for the People did allude to that. I think that, in fact, did

4

happen subsequent to the 1988 . . . conviction. . . . And I think if there was, in fact, a 1203.4 and a 17(b) granted, I think Evidence Code section 788 (c) gets triggered and we make the hurdle – or, we make first an analysis under 788 (c) in regards to Mr. Jenks' prior conviction." Neither party provided the trial court with an abstract of judgment, order of dismissal, transcript or other documentary evidence of the outcome of Jenks' criminal case. Without evidence that Evidence Code section 788 applied, the trial court considered whether to exclude the prior conviction under Evidence Code section 352. It found the evidence was more probative than unduly prejudicial and denied the motion in limine.

Evidence Code section 788 allows evidence of a prior felony conviction to be admitted into evidence for the purpose of "attacking the credibility of a witness," unless the witness received a pardon based on innocence, was granted a certificate of rehabilitation and pardon, or the "accusatory pleading against the witness has been dismissed under the provisions of Penal Code Section 1203.4 . . . ." (Evid. Code, § 788, subd. (a)-(c).) Appellant contends evidence of Jenks' felony conviction should have been excluded because the conviction had been expunged. We are not persuaded. At the hearing on appellant's motion in limine, defense counsel speculated that Jenks' conviction had been expunged, but provided the trial court with no competent evidence to that effect. Appellant failed to prove the preliminary fact on which exclusion of the evidence depended. Consequently, the trial court had no reason to find evidence of Jenks' prior conviction inadmissible under Evidence Code section 788 and properly denied the motion in limine. (Evid. Code, § 402.)

Moreover, any error in the admission of this evidence was harmless because there is no reasonable probability appellant would have obtained a better result had evidence of Jenks' prior conviction been excluded. (*People v. Castro* (1985) 38 Cal.3d 301, 318-319.) The relatively large quantity of drugs in appellant's possession, together with the digital scale, strongly support the inference that appellant possessed the drugs for sale. Jenks offered the opinion that appellant might have possessed the drugs

for personal use, if he was a heavy user. The arresting officer observed few outward symptoms of intoxication or heavy addiction. Appellant's cheeks were not sunken, he did not appear to have undergone severe weight loss, he was missing only one tooth and he did not have needle or scratch marks. In addition, appellant's methamphetamine pipe was clean and not dirty or burnt, as a heavy user's pipe would have been.

We are also unwilling to assume the jury disregarded Jenks' testimony based solely on his prior felony conviction. The jury was aware that the conviction was decades old and that Jenks had since entered recovery and started counseling other addicts. Jenks' personal experience purchasing, using and being addicted to illegal drugs may well have enhanced his credibility as an expert on those issues. In addition, Jenks did not opine that appellant possessed the methamphetamine for personal use. He testified it was possible that an addict would purchase 13.5 grams for personal use, but also stated that he would need more information to form an opinion about whether appellant had done so. Jenks also testified that he was unfamiliar with the local drug culture in Lompoc, where appellant's arrest occurred. The prosecution's expert witnesses, by contrast, were familiar with Lompoc and of the opinion that appellant possessed the methamphetamine for sale. Thus, the jury could have credited their testimony over Jenks' without reference to his prior convictions. We conclude there is no reasonable probability appellant would have obtained a more favorable result had the evidence been excluded.

*Receipt of Stolen Property*

At the time of his arrest, appellant possessed a gas mask and filter. These items were later found to have been issued by the United States Air Force to a sergeant stationed at the Vandenberg installation. The sergeant reported the items stolen from his car about seven weeks before appellant's arrest. Appellant told the arresting officer that his friend Willie gave him the gas mask as payment for a $20 debt. Appellant did not give the officer Willie's last name or contact information. He claimed to have asked Willie if the gas mask was stolen; Willie responded that it was a gift from a Marine

6

buddy. The gas mask was inside a large carrier; an inspection tag on the outside of the carrier indicated that it belonged to the Air Force and had been recently inspected.

Appellant was charged with receiving stolen property. (§ 496, subd. (a).) After the prosecution rested at trial, appellant moved for a judgment of acquittal because, he contended, there was no substantial evidence he knew the gas mask had been stolen. (§ 1118.1.) The trial court denied the motion. Appellant contends this was error. He contends alternatively that the judgment is not supported by substantial evidence. We disagree.

"In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) The trial court applies this same standard when ruling on a motion for judgment of acquittal under section 1118.1, but considers only the evidence in the record at the close of the prosecution's case. (*People v. Whalen* (2013) 56 Cal.4th 1, 55.) On appeal, we independently consider whether the evidence at the close of the prosecution's case satisfied the substantial evidence standard. (*People v. Cole* (2004) 33 Cal.4th 1158, 1212-1213.)

Section 496, subdivision (a) provides that it is an offense for a person to buy or receive stolen property, "knowing the property to be so stolen or obtained . . . ." (§ 496, subd. (a).) This is a specific intent crime; the defendant's knowledge that the property has been stolen is an element of the offense. (*People v. Reyes* (1997) 52 Cal.App.4th 975, 985.) Knowledge may, however, be proven by circumstantial evidence. (*People v. Vann* (1974) 12 Cal.3d 220, 224.) " 'Possession of recently stolen property is so incriminating that to warrant conviction there need only be, in addition to possession, slight corroboration in the form of statements or conduct of the defendant tending to show his guilt. [Citations.]' (*People v. McFarland* (1962) 58 Cal.2d 748, 754.)" (*People v. Vann* (1974) 12 Cal.3d 220, 224.)

7

We conclude the trial court correctly denied the motion for judgment of acquittal and that the judgment is supported by substantial evidence. The prosecution's case was that appellant had the gas mask in his possession when he was arrested. It was in a carrier that had an inspection tag from the local Air Force base, indicating the mask had been inspected within the last month. The gas mask had been reported stolen by the sergeant to whom it was issued. At the time of his arrest, appellant told the arresting officer he had received the gas mask in payment of a bar debt, but he would not provide contact information for the debtor, nor did he describe that person as being in the Air Force. A rational trier of fact could infer from this evidence that appellant knew the mask was stolen because he received it from someone other than a member of the Air Force.

Appellant testified he received the gas mask from a friend who, in turn, got it from a Marine buddy. This testimony does not establish that appellant lacked knowledge the gas mask had been stolen. The gas mask came with an inspection tag from the local Air Force base, not the Marine Corps. A rational trier of fact could infer either that the friend did not exist, or that appellant knew the friend's explanation was false and that the mask was stolen. Accordingly, substantial evidence supports appellant's conviction of receiving stolen property.

The judgment is affirmed.

NOT TO BE PUBLISHED.


                                                          YEGAN, J.

We concur:


        GILBERT, P. J.


        PERREN, J.


8

Rick Brown, Judge

Superior Court County of Santa Barbara

_____

Miriam R. Arichea, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Yun K. Lee, Peggy Z. Huang, Deputy Attorneys General, for Plaintiff and Respondent.