Filed 5/29/13  P. v. Sillard CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C070363 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF11463) |
| v. | |
| ANTHONY JOSEPH SILLARD, | |
| Defendant and Appellant. | |

Sentenced to 15 years and eight months in county jail for possessing both methamphetamine and marijuana for sale, defendant Anthony Joseph Sillard appeals, contending the trial court:  (1) violated his constitutional rights by failing to give a reasonable doubt instruction just before jury deliberations began; (2) erred in failing to instruct the jury on the lesser included offense of possession of marijuana; and (3) erroneously concluded that it had no power to suspend execution of a portion of his sentence under the Realignment Act.

We conclude that while the trial court did not violate defendant's constitutional rights by reading the standard reasonable doubt instruction before the presentation of evidence began instead of just before jury deliberations, the trial court did prejudicially err in failing to instruct on simple possession of marijuana.  Accordingly, while we affirm

1

defendant's conviction of possessing methamphetamine for sale, we reverse his conviction of possessing marijuana for sale and we remand the case to the trial court for further proceedings. As for defendant's claim of sentencing error, that issue is moot in light of the reversal and remand, but we do note that there is no evidence the trial court denied defendant a split sentence because it misunderstood its authority under the Realignment Act.

FACTUAL AND PROCEDURAL BACKGROUND

On the afternoon of January 26, 2011, Yolo County Sheriff's Deputy Matthew Davis saw a car parked in front of a mini-mart that caught his attention. He parked next to the car and approached and spoke with the woman seated in the driver's seat. As he talked to that woman, and another woman who was seated in the backseat on the passenger side of the car, defendant and a third woman came out of the mini-mart and got in the car. Defendant sat in the front passenger seat of the car, while the third woman sat in the backseat behind the driver. Upon learning the third woman was on searchable probation, Deputy Davis searched the car.

In a purse sitting on the center console in the middle of the two front seats, the deputy discovered a California identification card for defendant that gave his true name, instead of the false name he had previously given the deputy. In the area where defendant had been sitting, Deputy Davis found a man's jacket and a canvas bag. In one of the pockets of the jacket, he found a debit card with defendant's name on it. In another pocket he found a glass smoking pipe that appeared to have methamphetamine in it. In a small pocket on the front of the canvas bag he found a sandwich-type plastic baggie that contained what he believed to be marijuana. In another pocket of the canvas bag, he found two pieces of mail with defendant's name on it, a can of WD-40, a digital scale, and more than 50 small zip-top type plastic baggies. He found one cell phone in defendant's pocket and another on the seat where he had been sitting. The deputy did not find anything in the car that could be used to smoke marijuana.

2

Based on what he found, Deputy Davis arrested defendant and took him to jail. At the sheriff's department, the deputy discovered that the bottom of the WD-40 can could be screwed off, and inside he found six clear plastic baggies of what appeared to be methamphetamine and an additional baggie with three prescription-type pills.

The methamphetamine found in the pipe weighed .07 grams -- a usable amount. The six baggies of methamphetamine contained 27.92, 7.07, 6.91, 3.56, 3.43, and 1.77 grams, respectively, for a total of 50.66 grams. The marijuana weighed 10.91 grams, which is less than half an ounce.

Defendant was charged with possession of methamphetamine, possession of methamphetamine for sale, possession of marijuana for sale, and possession of drug paraphernalia. The information also alleged that he had four prior drug convictions and had served four prior prison terms. Two of his prior convictions were for violating Health and Safety Code section 11378 (possession of a controlled substance for sale).

On the first day of trial (November 28, 2011), after the jury was sworn and opening statements were given, the court provided the jury with a few instructions relating to the evaluation of evidence. Among those instructions was the following instruction, based on CALCRIM No. 103, dealing with the People's burden of proof beyond a reasonable doubt:

"I am going to start with the presumption of innocence and the burden of proof. Couple of things that came up during jury selection.

"Now, Mr. Sillard has pleaded not guilty to the charges. The fact that a criminal charge has been filed against him is not evidence that the charge is true. And you are not to be biased against him just because he's been arrested, charged with a crime, or brought to trial.

"A defendant in a criminal case is presumed to be innocent and this presumption requires that the People prove each element of a crime beyond a reasonable doubt. And

3

whenever I tell you the People must prove something, I mean, they must prove it beyond a reasonable doubt. Unless I specifically tell you otherwise.

"Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt.

"In deciding whether the People have proven their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that is received throughout the entire trial, and unless the evidence proves Mr. Sillard guilty beyond a reasonable doubt, he's entitled to an acquittal and [you] must find him not guilty."

Upon completion of the preliminary instructions, the court released the jury until the following morning, when the first witness was scheduled to testify. The presentation of all of the evidence was completed the next morning. At 2:30 p.m. that afternoon, following the lunch break, the trial court instructed the jury with the remainder of the jury instructions, noting that it was "going to skip the ones that you heard before, which means I am already on page three." The written instructions, a copy of which the court told the jury would be provided "for your use in the jury room," included the instruction the court had given before the presentation of evidence on the People's burden of proof beyond a reasonable doubt.

During the trial, Deputy Davis testified that less than half an ounce of marijuana is a useable amount, although "[i]t's on the larger side of personal use," and absent other indicia of sale "less than an ounce is considered personal use." Deputy Gary Richter testified that if all he knew was that a person had 10 grams of marijuana, he could believe it was possessed for personal use. If the person also had a scale and over 50 empty plastic baggies, he would start to believe it was possessed for sale. If there were also no means of ingesting the marijuana where the person was found, it would be his opinion that the marijuana was possessed for sale. Deputy Richter also testified that half an ounce of marijuana was worth "close to" $600 or $700.

4

The jury was instructed on possession of marijuana for sale but not on simple possession of marijuana. The jury found defendant guilty of all of the charges except the paraphernalia charge. The court found all of the enhancement allegations true.

At the sentencing hearing, defendant's parents, two children, fiancé, and a friend all told the court that defendant needed to be placed in a drug rehabilitation program. Defendant also addressed the court himself and said he needed to be in a residential drug program. The court explained that "placing Mr. Sillard on probation or ordering him to a program would be impossible under the law." The court subsequently imposed the upper term of three years for the possession of methamphetamine for sale, with three additional consecutive years for each of defendant's four prior drug convictions, for a total principle term of 15 years. The court also imposed eight months consecutive for the possession of marijuana for sale and three years stayed for the possession of methamphetamine. In the interest of justice, the court dismissed the prior prison term enhancements to avoid adding another four years to defendant's sentence. The court noted that the time was to be "served locally in the county jail under Section 1170, subdivision (h)" and stated that it was "not ordering mandatory supervision. The time is straight time."

Defendant timely appealed.

DISCUSSION

I

*Timing Of The Reasonable Doubt Instruction*

Defendant contends the trial court violated his fundamental constitutional rights when the court failed to read to the jury a reasonable doubt instruction just before the jury began deliberating.[1] Defendant is wrong.

---

[1] In support of this argument, defendant's appellate counsel cites (among other cases) *People v. Aranda* (2010) 188 Cal.App.4th 1490. The *Aranda* opinion was superseded by a grant of review by the California Supreme Court on January 26, 2011,

5

"It is a fundamental precept of our criminal justice system that before a jury may convict a defendant of a criminal offense, it must find that the prosecution has proved all elements of the offense beyond a reasonable doubt. State law and the federal Constitution require the trial court to instruct with regard to this fundamental principle when it advises the jurors of the applicable rules of law that govern their deliberation and decision." (*People v. Aranda*, *supra*, 55 Cal.4th at p. 349.) "[T]he omission of the standard reasonable doubt instruction will amount to a federal due process violation when the instructions that were given by the court failed to explain that the defendants could not be convicted 'unless each element of the crimes charged was proved to the jurors' satisfaction beyond a reasonable doubt.' [Citation.] When the trial court's instructions otherwise cover this constitutional principle, the failure to instruct with the standard reasonable doubt instruction does not constitute federal constitutional error." (*Id.* at p. 358.)

Here, the trial court did not omit the standard reasonable doubt instruction; the court simply gave that instruction to the jury before the presentation of evidence began rather than waiting until the final instructions to the jury just before the panel was to begin its deliberations. That is exactly what CALCRIM No. 103 is designed for. (See Judicial Council of California Criminal Jury Instructions (2012) p. 11, Bench Note to CALCRIM No. 103 ["This instruction is included in this section for the convenience of

---

and thus was not lawfully citable when appellate counsel filed defendant's opening brief on October 23, 2012. (See Cal. Rules of Court, rules 8.1105(e) [with an exception not applicable here, "an opinion is no longer considered published if the Supreme Court grants review"], 8.1115 [with exceptions not applicable here, "an opinion of a California Court of Appeal . . . that is not certified for publication or ordered published must not be cited or relied on by a court or a party in any other action"].) In fact, the Supreme Court released its opinion in *Aranda* (*People v. Aranda* (2012) 55 Cal.4th 342) on August 27, 2012, nearly two months before the opening brief was filed here, and, as will appear, that opinion is largely dispositive of defendant's argument. Counsel is admonished to avoid errors such as this in the future.

judges who wish to instruct on [reasonable doubt] during voir dire or before testimony begins"].)  CALCRIM No. 103 is identical in all material respects to CALCRIM No. 220, the instruction commonly referred to (along with CALJIC No. 2.90) as the "standard" reasonable doubt instruction in California.  (See *People v. Aranda*, *supra*, 55 Cal.4th at p. 353.)  And the practice of giving CALCRIM No. 103 at the outset of the case instead of giving CALCRIM No. 220 just before deliberations begin is completely consistent with California law.  (See Pen. Code, § 1093, subd. (f) ["*At the beginning of the trial* or from time to time during the trial, and without any request from either party, the trial judge may give the jury such instructions on the law applicable to the case as the judge may deem necessary for their guidance on hearing the case"], italics added; *People v. Benjamin* (1970) 3 Cal.App.3d 687, 698 [the trial court may instruct on reasonable doubt at the beginning of the trial], disapproved on other grounds in *People v. Brigham* (1979) 25 Cal.3d 283, 292, fn. 15.)  More important, though, defendant cites no authority for the proposition that it amounts to federal constitutional error for the trial court to instruct the jury on reasonable doubt before testimony begins rather than just before the beginning of jury deliberation, nor could he, since *Aranda* holds that as long as the trial court's instructions cover the constitutional principle of proof beyond a reasonable doubt, there is no such error.  (*Aranda*, at p. 358.)

To the extent defendant asserts that "the cases . . . have concluded [that] reasonable doubt instruction during jury selection is insufficient to comport with federal constitutional requirements," that assertion is entirely misplaced here because the trial court did not instruct on reasonable doubt *during jury selection*, but instead instructed the actual, empanelled jury on that subject after the panel had been sworn and just prior to the beginning of the presentation of evidence.  Moreover, the trial court provided the jury with a written copy of the reasonable doubt instruction to use during deliberations. Defendant has shown no violation of his fundamental constitutional rights in the trial court's use of this procedure.

II

*Omitted Instruction On Simple Possession Of Marijuana*

Defendant contends the trial court prejudicially erred in failing to sua sponte instruct the jury on simple possession of marijuana as a lesser included offense of possession of marijuana for sale. We agree.

"[I]nstructions on a lesser included offense . . . are required whenever evidence that the defendant is guilty only of the lesser offense is 'substantial enough to merit consideration' by the jury. [Citations.] 'Substantial evidence' in this context is ' "evidence from which a jury composed of reasonable [persons] could . . . conclude[]" ' that the lesser offense, but not the greater, was committed." (*People v. Breverman* (1998) 19 Cal.4th 142, 162.)

Here, less than half an ounce of marijuana was found in the canvas bag, which even the People's witnesses admitted was an amount usually associated with personal use. While the canvas bag also contained a scale and over 50 empty plastic baggies -- both of which are indicia of possession for sale -- the scale and the baggies were *not* with the marijuana. Instead, they were found in a separate pocket with the fake WD-40 can that held a substantial amount of methamphetamine, which was already divided up into six separate baggies. The marijuana, on the other hand, was found by itself in a single baggie in the smaller pocket on the front of the canvas bag. While the physical separation of the marijuana from the methamphetamine, the scale, and the baggies is certainly not dispositive of whether the marijuana was possessed for personal use only, it is evidence that merited consideration by the jury. Additionally, while Deputy Richter found that the absence of any means for ingesting the marijuana tipped the scale of his opinion as to whether the marijuana was possessed for sale, a reasonable trier of fact might have believed that defendant intended to use the marijuana later, at a location where such means could be found. As defendant points out, " 'personal use' is not synonymous with 'immediate use.' " On the evidence here, a properly instructed jury

8

might have concluded that while defendant possessed the substantial amount of methamphetamine found in the fake WD-40 can with the intent to sell it, there was at least a reasonable doubt as to whether he possessed the relatively small amount of marijuana found separately with that same intent.

"[I]n a noncapital case, error in failing sua sponte to instruct . . . on all lesser included offenses and theories thereof which are supported by the evidence must be reviewed for prejudice exclusively under [*People v. Watson* (1956) 46 Cal.2d 818].  A conviction of the charged offense may be reversed in consequence of this form of error only if, 'after an examination of the entire cause, including the evidence' (Cal. Const., art. VI, § 13), it appears 'reasonably probable' the defendant would have obtained a more favorable outcome had the error not occurred." (*People v. Breverman*, *supra*, 19 Cal.4th at p. 178.)  "[A] reversal will result only when there exists, in the opinion of the court, at least such an equal balance of reasonable probabilities as to leave the court in serious doubt as to whether the error has affected the result." (*People v. Watson*, *supra*, 46 Cal.2d at p. 837.)

We have laid out already the evidence regarding the marijuana found in the canvas bag.  Given the relatively small amount of marijuana found, the fact that it was not packaged for sale, and the fact that it was found in a separate part of the bag from the methamphetamine, the baggies, and the scale, we find ourselves "in serious doubt as to whether the error [in failing to instruct the jury on simple possession of marijuana] affected the result." (*People v. Watson*, *supra*, 46 Cal.2d at p. 837.)  Thus, prejudice has been shown.

According to the People, any error in failing to instruct on simple possession was harmless because "defense counsel argued that this was a simple possession case" but "[t]he jury rejected that argument."  The problem with the People's position is that *the jury instructions* (not to mention the verdict forms) did not give the jury the option of finding defendant guilty of simple possession, whatever defense counsel may have

9

argued.  The choice the jury faced under  the law the jury was told it had to follow (i.e., the instructions) was that defendant was either guilty of possessing the marijuana for sale or he was guilty of no crime with respect to the marijuana.  (This same choice was reflected in the verdict forms.)  Thus, the People's attempt to show harmless error is without merit.

Because the trial court prejudicially erred in failing to instruct the jury on the lesser included offense of possession of marijuana, we must reverse defendant's conviction of possessing marijuana for sale.

III

*The Trial Court's Understanding Of Its Authority Under The Realignment Act*

Although defendant's argument about the trial court's understanding of its authority under the Realignment Act is technically moot because the reversal of his conviction for possessing marijuana for sale will require resentencing on remand, we nonetheless note that there is no evidence the trial court denied him a split sentence because the court misunderstood its authority under the Realignment Act.

Under the Realignment Act, the trial court can commit a defendant to the county jail either "[f]or a full term in custody as determined in accordance with the applicable sentencing law" (Pen. Code, § 1170, subd. (h)(5)(A)) or "[f]or a term as determined in accordance with the applicable sentencing law, but suspend execution of a concluding portion of the term selected in the court's discretion, during which time the defendant shall be supervised by the county probation officer in accordance with the terms, conditions, and procedures generally applicable to person placed on probation, for the remaining unserved portion of the sentence imposed by the court" (*id.*, subd. (h)(5)(B)(i)).  Any such concluding portion of a sentence is known as "mandatory supervision."  (*Id.*, subd. (h)(5)(B)(ii).)  A sentence in which a defendant is placed on mandatory supervision for a concluding portion of the term is commonly known as a "split" sentence.

10

In a sentencing brief here, the People argued that defendant was not eligible for a split sentence because subdivision (a)(11) of Penal Code section 1203.07 provides that execution of sentence shall not be suspended for any person convicted of possessing methamphetamine for sale with a prior conviction for violating Health and Safety Code section 11378.[2]  On appeal, defendant contends the bar in Penal Code section 1203.07 applies only to "a grant of probation and the suspending of an entire sentence."  In his view, the statute does not bar a court from imposing a split sentence under the Realignment Act, even though the split sentence is achieved by suspending execution of the concluding portion of the sentence.  Defendant further argues that the trial court here "thought that a split sentence *was* prohibited and accordingly, that it lacked the discretion to impose a 'split sentence' " on defendant.  (Italics added.)  According to defendant, "[t]he trial court failed to recognize and/or misunderstood the scope of its discretion to order a split sentence, and consequently failed to exercise that discretion."

We find no evidence in the record to support defendant's contention that the trial court denied him a split sentence because the court misunderstood its authority under the Realignment Act.  An " 'order of the lower court is *presumed correct*.  All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)  "The general rule is that a trial court is presumed to have been aware of and followed the applicable law.  [Citations.]  These general rules concerning the

---

[2]      "Notwithstanding Section 1203 [the general probation statute], probation shall not be granted to, nor shall the execution or imposition of sentence be suspended, for any of the following persons:  [¶] . . . [¶]  Any person who is convicted of violating Section . . . 11378 of the Health and Safety Code by possessing for sale . . . methamphetamine, . . . and who has one or more convictions for violating Section . . . 11378 . . . of the Health and Safety Code."  (Pen. Code, § 1203.07, subd. (a)(11).)

11

presumption of regularity of judicial exercises of discretion apply to sentencing issues." (*People v. Mosley* (1997) 53 Cal.App.4th 489, 496-497.)

In arguing here that the record "affirmatively establishes that the court misunderstood [the scope of] its discretion" with respect to imposition of a split sentence, defendant points to certain comments the court made during the sentencing hearing, but he takes those comments out of context. For example, defendant points to the court's comment that "placing Mr. Sillard on probation or ordering him to a program would be impossible under the law." The court made this comment, however, immediately after listening to defendant and his family members plead for his placement in a residential drug treatment rather than incarceration. For example, defendant's mother had pleaded, "Please, your Honor, please find it in your heart to put my son in a program and not just to let him go years in jail." In response to this and other similar entreaties, the trial court said, "it is certainly clear that placing Mr. Sillard on probation or ordering him to a program would be impossible under the law . . . . [¶] If I were to try to make such an order, it is an illegal order. It can't be enforced. It is no better than saying I am going to grant Mr. Sillard the ability to fly with wings. It has no effect to try to do that." Taken in context, then, this comment evidenced the trial court's correct understanding that under Penal Code section 1203.07, the court could not place defendant on probation instead of in jail so that he could participate in a residential drug treatment program. That comment, however, does not show anything about the court's understanding of its power to impose a split sentence under the Realignment Act.

In comments the court made later before imposing sentence, the court stated as follows: "Someone was talking about how jail won't be good for him. I am not concerned with what's good for Mr. Sillard when it comes to whether he should be in jail or not. [¶] I don't have the ability to consider something other than sending him away. The law says that he cannot be placed on probation. That's all there is to it." Defendant relies on this statement to show that the trial court erroneously believed "a split sentence

12

was prohibited," but nothing about the statement suggests that. Again, the court was referring to probation and not to mandatory supervision as the concluding part of a jail sentence under the Realignment Act.

Ultimately, after imposing the 15-year, eight-month term on defendant, the court stated as follows:

"Three hundred seventy-three plus three seventy-three for a total of seven hundred forty-six days credit.

"Fifteen years eight months is also one hundred eighty-eight months and is also five thousand seven hundred eighteen days served locally in the county jail under Section 1170, subdivision (h).

"The Court is not ordering mandatory supervision. The time is straight time."

It is significant, given the court's repeated comments earlier about how it *could* not order probation, that the court did not say it *could* not order mandatory supervision, even though the People had argued that earlier in the hearing. Instead, the court simply said that it *was* not ordering mandatory supervision. And it did so after commenting at length that defendant was not being incarcerated for being a drug addict, but rather for being a drug *dealer* with "[c]onviction after conviction after conviction."

On the record before us, then, there is no evidence to suggest that the trial court refused to impose a split sentence because it believed it could not do so. Rather, the record suggests that the court refused to impose a split sentence because it believed such a sentence was not appropriate for defendant.

DISPOSITION

Defendant's conviction of possessing methamphetamine for sale is affirmed, but his conviction of possessing marijuana for sale is reversed, and the case is remanded to the trial court for further proceedings.

        ROBIE    , Acting P. J.

We concur:

    MURRAY   , J.

    DUARTE   , J.

14