Filed 8/1/16  P. v. Mattis CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Glenn)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JEFFREY DANIEL MATTIS,<br><br>Defendant and Appellant. | C077519 and C078377<br><br>(Super. Ct. Nos. 13NCR09652, 11NCR08865, 1NCR08866, 12SCR07690C) |

These are consolidated appeals in case Nos. C077519 and C078377.

Case No. C077519 arises out of defendant Jeffrey Daniel Mattis's convictions of 40 counts of being a felon in possession of a firearm.  (Pen. Code, § 29800, subd. (a)(1).)[1]  The firearm convictions involved two convictions of section 29800, subdivision (a)(1), for each one of the firearms possessed by defendant.  Defendant was

---

[1]  Undesignated statutory references are to the Penal Code.

1

also convicted of possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)), possession of a pickup truck knowing it was stolen property (§ 496d, subd. (a)), and being a felon in possession of ammunition (§ 30305, subd. (a)(1)). Defendant admitted he had previously been convicted of two felonies and he had not remained free of prison custody for more than five years (§ 667.5, subd. (b)). The trial court sentenced him to serve 16 years and 4 months in prison. After defendant filed a notice of appeal from the judgment, he filed a motion for resentencing under Proposition 47.[2]

Case No. C078377 arises out of the trial court's determination it lacked jurisdiction to resentence him under Proposition 47 after the filing of a notice of appeal in this case, No. C077519.

On appeal, defendant contends (1) the jury was not properly instructed because the trial court orally instructed the jury on the reasonable doubt standard only once at the start of trial, (2) the prosecutor engaged in prejudicial misconduct during closing arguments by drawing a partially completed illustration of the American flag to describe the reasonable doubt standard -- and he received ineffective assistance of counsel because his trial attorney did not object to the misconduct or request that the jury be admonished, (3) he was erroneously convicted of 40 counts of being a felon in possession of a firearm based on possession of only 20 firearms, (4) we must reduce his felony conviction for possession of methamphetamine to a misdemeanor under Proposition 47, (5) the trial court had jurisdiction to reduce his felony conviction of possession of methamphetamine to a misdemeanor even after defendant filed his notice of appeal, (6) he is entitled to day-

---

[2]     Proposition 47, the Safe Neighborhoods and Schools Act, went into effect on November 5, 2014. (See *People v. Rivera* (2015) 233 Cal.App.4th 1085, 1089 (*Rivera*).)

for-day presentence custody credits, and (7) the trial court erred in imposing a restitution fine and parole revocation fine, both in the amount of $10,500.

We reject defendant's claim of instructional error because the trial court read the jury a correct instruction on the reasonable doubt standard at the outset of trial and also provided the same correct instruction to the jury in written form for reference during deliberations. Defendant forfeited the issue of prosecutorial misconduct because his trial attorney did not object or request that the jury be admonished. However, defendant's right to effective representation required his trial attorney to object. Nonetheless, the failure to object was harmless in view of the whole record.

We conclude defendant could be convicted of only one count of being a felon in possession of a firearm for each firearm he possessed. Accordingly, we strike 20 of his 40 convictions for being a felon in possession of a firearm. Defendant's claim for relief under Proposition 47 is not cognizable in this appeal, case No. C077519, and we conclude the trial court was correct in finding it lacked jurisdiction to resentence him while this appeal is pending. Defendant is entitled to additional presentence custody credits because the trial court did not give him day-for-day credit as provided by section 4019. Finally, we modify the restitution fine and the parole revocation fine to the statutory maximums.

Accordingly, we reverse 20 of the 40 convictions for being a felon in possession of a firearm and remand the case to the trial court for resentencing. In all other respects the judgments are affirmed.

3

FACTUAL AND PROCEDURAL HISTORY

***Prosecution Evidence***

Outside the presence of the jury, defendant admitted he had previously been convicted of two felonies and he had not remained free from prison custody for more than five years. (§§ 273.5, 422, 667.5.)

In 2013, California Highway Patrol Officer Justin Haynes was assigned as a member of the Glenn County Narcotics Task Force. In that capacity, Officer Haynes created a Facebook account and sent out friend requests to persons whose names had been regularly discussed among members of the narcotics task force. Defendant was one of the people who accepted the friend request. On February 21, 2013, defendant had a Facebook account for which he used his alias, "Jeff Ball." On Facebook, defendant posted photos of his residence at 6411 Road 15 in Orland, California. Officer Haynes was surprised by some of the residential photos because they depicted a large number of firearms. Defendant had also posted a video on September 3, 2012, in which he was twirling two revolvers with white pearl handles. On March 18, 2013, defendant sent a message through his Facebook account that his address was 6411 Road 15 in Orland, California. In sending the message about his address, defendant used his real name.

On April 9, 10, and 11, 2013, Officer Haynes conducted surveillance and saw defendant at the residence on all three occasions. Using binoculars, Officer Haynes saw defendant carrying miscellaneous objects, do some welding, and otherwise work in the backyard. The surveillance was not conducted at a time when it could be ascertained whether defendant slept at the residence. However, defendant did not appear to be moving any objects into his vehicle.

4

Pursuant to a warrant, eight law enforcement officers searched the residence at 6411 County Road 15 on April 19, 2013. In the master bedroom, the officers found a glass pipe and 0.3 grams of methamphetamine.

On the kitchen table, officers found mail addressed to defendant at the residence. In the bedrooms, officers found male and female clothing.

Unspent ammunition was found on the kitchen table, in the mudroom, in a storage room, and outside the house in two storage sheds. The ammunition amounted to several hundred rounds of miscellaneous caliber ammunition.

Underneath a tarp, the officers found a partially dismantled 2006 Chevrolet truck that had been reported stolen by Troy Miles approximately a month before the search of defendant's residence. Miles had not given anyone permission to take or use the truck, which had been intact when stolen.

The police also found 20 firearms during their search. On a coffee table, there were two pearl-handled revolvers. In a bedroom, they found a Winchester 1894 .32-caliber rifle and a Marlin Model 39A. In a storage room, the officers found a Remington 457 rifle, a Ruger 10/22, a Mauser 1895 rifle, a Remington 597 rifle, two loaded Winchester Model 74 firearms, a loaded Remington Model 721, a loaded Remington Model 550, and a loaded Stevens Arms shotgun.

In one of the storage sheds, officers found a loaded Savage Mark II rifle, a Remington .22 caliber rifle, a Stevens Model 46 rifle, a Marlin 81-DL rifle, and a J.C. Higgins .22 caliber rifle. A Valentine's Day card addressed to defendant was found in the same shed.

A rusty Remington shotgun was found next to a barbecue.

A 30.06 rifle was found on the roof of a metal feeding shed. Defendant's alias, "Jeff Ball," was on a sign on the same roof.

Law enforcement officers were unable to establish the ownership of the firearms with a computer-based search of the serial numbers on the firearms. Because of a big backlog in forensic testing by the Department of Justice, no fingerprint evidence was collected.

Defendant was arrested on a bicycle approximately a quarter mile from the residence on the same day as officers searched the residence. Defendant was carrying a 3.25-inch switchblade knife.

A search of defendant's cell phone revealed some of the same photos he had posted on Facebook and also included a photo of a gun found in the residence during the search.

On April 19, 2013, David Gubser was living approximately 200 yards west of the residence at 6411 County Road 15. Gubser had seen defendant drive by several times in a loud blue truck. However, Gubser was not familiar with who lived at 6411 County Road 15. After April 19, 2013, Gubser no longer heard the loud truck drive by his residence.

After officers seized the weapons, Stacy Redenius and Daniel Whitney came forward and claimed ownership of the firearms. Detective Justin Gibb and Lieutenant Sean Arlin conducted an interview with Redenius and Whitney. Whitney came forward voluntarily. Whitney claimed the firearms belonged to his mother and his deceased father. He explained his mother was afraid of the firearms and did not want them anymore. When Whitney delivered the firearms to 6411 County Road 15, defendant was "in and out at that point in time." Whitney said he, Redenius, and defendant put the firearms into a wooden shed and locked it with a dead-bolt. Officer Gibbs believed Whitney was "kind of confused."

6

Whitney further told officers that at the time he delivered the firearms, defendant and Redenius were ending their dating relationship. Officer Gibbs testified that on a vanity mirror in one of the bedrooms, Redenius had written an "extremely derogatory" note to "Jeff" in lipstick. Officer Gibbs could not recall any of the specifics of the message other than it was "an unpleasant message."

Detective Gibbs did not follow up on Whitney's claims regarding the firearms' ownership. The detective also was not aware of anyone else looking into Whitney's claims. On cross-examination, Detective Gibbs answered that he did not know whether Whitney was the owner of the firearms. The officers also never determined whether any of the firearms were stolen. Neither Whitney nor Redenius was able to establish ownership of the firearms.

### Defense

The defense chose to rely on the state of the evidence.

## DISCUSSION

## I

### Jury Instruction on the Reasonable Doubt Standard

Defendant argues the trial court failed to properly instruct the jury because the court orally instructed the jury on the reasonable doubt standard only at the beginning of the two-day trial. Defendant acknowledges the trial court gave jurors the same reasonable doubt instruction in written form for reference during the jury's deliberations. Nonetheless, he argues the trial court's failure to repeat the reasonable doubt instruction orally before deliberations requires reversal. We are not persuaded.

## A.

### *Instructions Given*

After the jury was sworn, the trial court orally instructed the jury as to the law governing the case. Among the instructions given was CALCRIM No. 103, with which the trial court informed the jury:

"I will now explain the presumption of innocence and the People's burden of proof.

"The Defendant has entered a plea of not guilty to all of the charges. The fact that a criminal charge has been filed against the Defendant is not evidence of the -- that the charge is true. You must not be biased against the Defendant just because he has been arrested, charged with a crime, or brought to trial.

"A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove a defendant guilty beyond a reasonable doubt. Whenever I tell you that the People have to prove something, I mean they must prove it beyond a reasonable doubt.

"Now proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt.

"In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all of the evidence that was received throughout the entire time. Unless the evidence proves the Defendant guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty."

Defendant's jury trial occurred over the course of two consecutive days. Before sending the jury to deliberate, the trial court gave jurors written instructions. The trial court also orally informed jurors that "there are several books that are back here [in the

8

jury room] -- legal books; we've got materials throughout the courtroom.  They are totally off limits.  You cannot look at anything except the instructions and the exhibits and your notes, but that's it."

The written instructions included CALCRIM No. 103 on the reasonable doubt standard.

## B.

### *Duty to Instruct on the Reasonable Doubt Standard*

In *Victor v. Nebraska* (1994) 511 U.S. 1 [127 L.Ed.2d 583], the United States Supreme Court held that "[t]he Due Process Clause requires the government to prove a criminal defendant's guilt beyond a reasonable doubt, and trial courts must avoid defining reasonable doubt so as to lead the jury to convict on a lesser showing than due process requires."  (*Id.* at p. 22.)  The Supreme Court further explained the federal "Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course.  [Citation.]  Indeed, so long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt [citation], the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof.  [Citation.]  Rather, 'taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury.' "  (*Id.* at p. 5, quoting *Holland v. United States* (1954) 348 U.S. 121, 140 [99 L.Ed. 150].)

In this case, defendant does not deny the trial court's oral jury instruction at the beginning of trial properly stated the reasonable doubt standard.  Defendant also does not deny the trial court gave a full set of written instructions -- including instruction on the reasonable doubt standard -- to the jury for reference during deliberations.  Thus, defendant focuses on the *timing* of the trial court's *oral* instruction to the jury regarding

9

the reasonable doubt standard. He argues the trial court violated his federal constitutional due process rights in failing to orally repeat instructions on the reasonable doubt standard after closing arguments and before jury deliberations. We are not persuaded.

As the Supreme Court held in *Victor v. Nebraska*, federal due process does not require express definition of the reasonable doubt standard for the jury. (511 U.S. at p. 5.) Moreover, other reported federal case law holds the *timing* of jury instructions alone does not provide a basis for finding error. For example, the Third Circuit Court of Appeals declared it "will not assume that jurors, contrary to their oath, ignored part of the judge's initial instruction simply because it came early in the trial." (*U.S. v. Hernandez* (3d Cir. 1999) 176 F.3d 719, 734 & fn. 8 [four-day trial].)

In *United States v. Davila-Nater* (5th Cir. 1973) 474 F.2d 270, the Fifth Circuit Court of Appeals rejected an assertion of error based on the trial court's failure to reiterate a jury instruction on the reasonable doubt standard given at the beginning of trial. (*Id.* at p. 284-285.) At the outset of trial, the trial court stated only: "That the defendant is presumed to be innocent until and unless his [or her] guilt is established beyond a reasonable doubt." (*Id.* at p. 284.) Prior to deliberations, the trial court referred to the reasonable doubt standard in telling the jury, " 'As I told you in the beginning, and I will tell you again, in a criminal case there is no obligation of the defendant to prove his [or her] innocence.' " (*Id.* at p. 285.) The Fifth Circuit concluded the initial instruction sufficed. "To say that this jury tried this case while unaware of the presumption of innocence would be to indulge in appellate speculation . . . ." (*Ibid.*)

More recently, the Ninth Circuit Court of Appeals held a trial court was not required to reinstruct the jury it could draw no adverse inference from the defendant's invocation of his right to remain silent. (*United States v. Padilla* (9th Cir. 2011) 639 F.3d 892, 894 (*Padilla*).) The *Padilla* court noted the United States Supreme Court "said

10

nothing about the timing of the [no-adverse inference] instruction and certainly gave no indication that duplicate instructions were required. As a general matter, we follow the rule that a defendant is not 'entitled to an instruction that merely duplicates what the jury has already been told.' [*United States v*.] *Lopez–Alvarez* [(9th Cir. 1992)] 970 F.2d [583,] 597. In this case, not only was the language of the preliminary [no-adverse inference] instruction sufficient, the timing—after the jury was sworn—was sufficient to pass constitutional muster." (*Padilla*, at p. 897.)

Defendant cites no authority holding federal due process guarantees require oral instruction on the reasonable doubt standard immediately prior to jury deliberations. And our search has not revealed any reported decisions holding a trial court commits federal constitutional error by failing to orally reinstruct on the reasonable doubt standard immediately prior to jury deliberations.

Our conclusion the trial court in this case did not commit federal constitutional error does not obviate the need to consider whether the omission constituted an error of state law. Under California law, a trial court is generally not required to repeat jury instructions given during trial unless something at trial occurred that might cause juror confusion. (*People v. Chung* (1997) 57 Cal.App.4th 755, 758-759.) The *Chung* court held the trial court did not abuse its discretion in giving half of the jury instructions immediately after opening statements and the other half after closing arguments of counsel. (*Id.* at p. 757.) The earlier instructions were not repeated. (*Ibid.*) In affirming the convictions, the *Chung* court explained that "section 1093, subdivision (f) plainly authorizes the trial court to instruct the jury on principles of law '[a]t the beginning of the trial or from time to time during the trial. . . .' It does not require rereading of all instructions at the end of trial. . . . [S]ection 1094 specifically gives the trial court discretion to vary the order of proceedings stated in . . . section 1093. As our Supreme

11

Court has stated:  '[D]efendant complains of the fact that the trial court chose to give the jury its instructions on circumstantial evidence at the beginning rather than the end of trial; this procedure, however, is within the discretion of the court.'"  (*Chung*, at p. 759, quoting *People v. Webb* (1967) 66 Cal.2d 107, 128.)

We also find instructive the California Supreme Court's reasoning in *People v. Rodrigues* (1994) 8 Cal.4th 1060.  *Rodrigues* involved an automatic appeal from a death sentence in a case in which the prosecution introduced evidence of unadjudicated offenses as aggravating circumstances during the penalty phase.  (*Id.* at p. 1190.)  Although the trial court instructed the jury on the reasonable doubt standard during the guilt phase, the court did not reiterate the instruction during the penalty phase.  (*Ibid.*)  However, the trial court did inform jurors they could consider guilt phase instructions.  The jurors were also provided with written copies of the guilt phase instructions.  (*Ibid.*)  The *Rodrigues* court held a trial court was not required to reiterate instructions on the presumption of innocence because it was reasonable to assume the jury would continue to apply the guilt-phase instructions.  (*Id.* at pp. 1190–1191.)  The Supreme Court affirmed on grounds it "reviewed the record and found nothing to contradict the earlier instructions on the presumption of innocence and the prosecutorial burden of proof."  (*Id.* at p. 1191.)  In short, a trial court is not required to orally reinstruct the jury when correct instructions on the reasonable doubt standard have been given at the outset of trial and the events at trial have not transpired to cause juror confusion.

## C.

### *The Jury Received Oral and Written Instructions on the Reasonable Doubt Standard*

Here, the trial court did more than orally instruct the jury on the reasonable doubt standard at the outset of trial.  The trial court also provided the reasonable doubt jury instruction in written form for reference to the jury during deliberations.

Consequently, we reject defendant's reliance on *People v. Elguera* (1992) 8 Cal.App.4th 1214 and *People v. Phillips* (1997) 59 Cal.App.4th 952 (*Phillips*). In *Elguera*, the trial court defined reasonable doubt only during jury selection. At no time *during trial* did the court give, orally or in writing, the reasonable doubt instruction. (*Id.* at p. 1217) In *Phillips*, no jury instruction on reasonable doubt was given even though the attorneys gave partial and conflicting definitions of the standard during closing arguments. (*Id.* at pp. 953-954.)[3] By contrast, in this case the trial court properly instructed jurors on the reasonable doubt standard orally after the jury was selected *and* in writing for the jury deliberations.

We conclude the trial court did not err in instructing on the reasonable doubt standard. Oral instructions were properly given at the outset of trial. And after closing arguments, the trial court provided written instruction on the reasonable doubt standard. As we noted earlier, defendant does not assert these instructions misstated the reasonable doubt standard or reduced the prosecution's burden of proof. Instead, defendant contends only that the trial court erred by failing to orally repeat an already given and correct instruction at a time when it was provided again to the jury in written form. Under this circumstance, we conclude the trial court did not abuse its discretion.

### D.

### *CALCRIM Nos. 103 and 220*

As defendant notes, the trial court in this case relied on CALCRIM No. 103 to orally instruct at the beginning of trial *and* to instruct the jury in written form for

---

[3]     We also note *People v. Phillips*, *supra*, 59 Cal.App.4th 952 was overruled in *People v. Aranda* (2012) 55 Cal.4th 342, 366 on grounds the *Phillips* court incorrectly held the instructional error was structural error and not subject to harmless error analysis.

13

deliberations.**4** Defendant points out the trial court did not use CALCRIM No. 220 to define the reasonable doubt standard before the jury began its deliberations.**5** Indeed,

---

**4** CALCRIM No. 103 states:

"I will now explain the presumption of innocence and the People's burden of proof. The defendant[s] (has/have) pleaded not guilty to the charge[s]. The fact that a criminal charge has been filed against the defendant[s] is not evidence that the charge is true. You must not be biased against the defendant[s] just because (he/she/they) (has/have) been arrested, charged with a crime, or brought to trial

"A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove a defendant guilty beyond a reasonable doubt. Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt [unless I specifically tell you otherwise].

"Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt.

"In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial. Unless the evidence proves the defendant[s] guilty beyond a reasonable doubt, (he/ she/they) (is/are) entitled to an acquittal and you must find (him/her/ them) not guilty."

**5** CALCRIM No. 220 states:

"The fact that a criminal charge has been filed against the defendant[s] is not evidence that the charge is true. You must not be biased against the defendant[s] just because (he/she/they) (has/have) been arrested, charged with a crime, or brought to trial.

A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove a defendant guilty beyond a reasonable doubt. Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt [unless I specifically tell you otherwise].

14

defendant argues that "the trial court's omission of CALCRIM No. 220 from the predeliberation instructions . . . violated defendant's due process rights and right to a fair trial." However, as defendant acknowledges "CALCRIM No. 103 . . . mirrors the language of CALCRIM No. 220."

In California, trial courts usually employ CALCRIM No. 103 at the outset of trial and CALCRIM No. 220 after closing arguments to define the reasonable doubt standard. CALCRIM No. 103 and 220 both instruct the jury on the presumption of innocence and reasonable doubt standard. Both instructions use identical language in informing the jury a defendant is presumed innocent, proof beyond a reasonable doubt requires proof leaving jurors with an abiding conviction the charge is true, and jurors must acquit if the evidence does not prove the charges beyond a reasonable doubt. (Compare CALCRIM No. 103 [paras. 2-4] with CALCRIM No. 220 [paras. 2-4].) The primary difference between the instructions is CALCRIM No. 103 is included in the chapter of pretrial instructions and CALCRIM No. 220 is included among post-trial introductory instructions. (Judicial Council of California Criminal Jury Instructions (2015 ed., vol. 1), at pp. 1, 10 [CALCRIM No. 103], 25, 43 [CALCRIM No. 220].)

---

Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt.

In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial. Unless the evidence proves the defendant[s] guilty beyond a reasonable doubt, (he/ she/they) (is/are) entitled to an acquittal and you must find (him/her/them) not guilty."

Insofar as defendant contends the trial court erred in giving CALCRIM No. 103 rather than CALCRIM No. 220 to define the reasonable doubt standard, we reject the contention.

## II

### *Prosecutorial Misconduct*

Defendant argues the prosecutor engaged in prejudicial misconduct during closing arguments by drawing a partially completed illustration of the United States flag to describe the reasonable doubt standard. Anticipating the issue has not been preserved for appeal, defendant contends he received ineffective assistance of counsel because his trial attorney did not object or request that the jury be admonished. We conclude defendant's trial attorney should have objected to the prosecutor's argument about the flag but the lack of objection or request for the jury to be admonished was harmless.

### A.

### *Closing Arguments*

In his closing argument, trial counsel for defendant argued the evidence was insufficient to prove any of the charges (other than possession of the switchblade knife) beyond a reasonable doubt. The prosecutor responded by partially drawing the United States flag and arguing as follows:

"I don't have to finish drawing this drawing for you to all know beyond a reasonable doubt that I'm going to draw a flag of the United States. I'm not going to have to fill in every stripe, or to put every star there for you to know beyond a reasonable doubt that I could stand here all afternoon and draw you a flag based upon the circumstantial evidence and the evidence of the Defendant's possession of the

16

methamphetamine, the ammunition, and the guns.  So I ask you to return a verdict of guilty."[6]

Defense counsel did not object or request that the jury be admonished.  After the prosecutor's argument regarding the flag illustration, the trial court gave jurors a written set of jury instructions that included a definition of the reasonable doubt standard of proof.  The trial court then sent the jury to deliberate.

## B.

### *Forfeiture*

The Attorney General contends defendant's claim of prosecutorial error is forfeited because he failed to timely object in the trial court.  To preserve a claim of prosecutorial error or misconduct for appeal, "a defendant must make a timely and specific objection to the alleged misconduct and request the jury be admonished to disregard it."  (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1339.)  Here, defendant's trial attorney did not object or request that the jury be admonished.  Consequently, his claim of prosecutorial misconduct during closing arguments is forfeited.

## C.

### *Ineffective Assistance of Counsel*

Anticipating our conclusion the claim of prosecutorial misconduct is forfeited, defendant argues he received ineffective assistance of counsel because his trial attorney did not object or request that the jury be admonished.

As the California Supreme Court has explained, "To prevail on a claim of ineffective assistance of counsel, a defendant ' "must establish not only deficient performance, i.e., representation below an objective standard of reasonableness, but also

---

[6]    The actual illustration shown to the jury is not part of the appellate record.

17

resultant prejudice." ' (*People v. Hart* [(1999)] 20 Cal.4th [546,] 623.)  A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  (*Strickland v. Washington* (1984) 466 U.S. 668, 689 [80 L.Ed.2d 674].)  Tactical errors are generally not deemed reversible, and counsel's decisionmaking must be evaluated in the context of the available facts.  (*Id*. at p. 690.)  To the extent the record on appeal fails to disclose why counsel acted or failed to act in the manner challenged, we will affirm the judgment unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation.  (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266.)  Moreover, prejudice must be affirmatively proved; the record must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.'  (*Strickland v. Washington, supra*, 466 U.S. at p. 694.)"  (*People v. Maury* (2003) 30 Cal.4th 342, 389.)

We begin by considering whether defendant's trial attorney had an obligation to object to the prosecutor's use of a partial illustration of the United States flag to address the reasonable doubt standard.  As to the flag illustration, we conclude the prosecutor engaged in an impermissible closing argument.  In *People v. Centeno* (2014) 60 Cal.4th 659 (*Centeno*), the California Supreme Court recognized that "[c]ourts have repeatedly cautioned prosecutors against using diagrams or visual aids to elucidate the concept of proof beyond a reasonable doubt . . . , yet these arguments persist."  (*Id.* at p. 662 [collecting authority].)  In *Centeno*, "the prosecutor used a diagram showing the boundaries of California and urged the jury to convict based on a 'reasonable' view of the evidence."  (*Ibid.*)  The Supreme Court reversed because "[t]he argument unduly risked misleading the jury about the standard of proof."  (*Ibid.*)  The *Centeno* court explained

18

that "[t]he use of an iconic image like the shape of California or the Statue of Liberty, unrelated to the facts of the case, is a flawed way to demonstrate the process of proving guilt beyond a reasonable doubt. These types of images necessarily draw on the jurors' own knowledge rather than evidence presented at trial. They are immediately recognizable and irrefutable. Additionally, such demonstrations trivialize the deliberative process, essentially turning it into a game that encourages the jurors to guess or jump to a conclusion." (*Id.* at p. 669.)

Here, the prosecutor's reliance on the equally iconic image of the United States flag likewise constituted an impermissible argument that trivialized the deliberative process. Consequently, defendant's trial attorney had a duty to object to the impermissible argument and request that the jury be admonished unless the defense had a tactical reason for refraining from objecting.

In *Centeno*, the Supreme Court determined there was no tactical reason for the defense not to lodge a timely objection. (60 Cal.4th at pp. 675–676.) " 'Explaining' the reasonable doubt standard by using an iconic image unrelated to the evidence is particularly misleading to the jury and strikes at the most fundamental issue in a criminal case. The image is too powerful and pivotal to dismiss as irrelevant or trivial argument. Additionally, the argument was aimed at lessening, not heightening, the burden of proof. The prosecutor posited an easy example of proof beyond a reasonable doubt to reassure this jury that it could confidently return guilty verdicts in a case not nearly so strong as her hypothetical. The hypothetical, along with the prosecutor's argument that the jury could convict based on a 'reasonable' account of the evidence, cannot conceivably be viewed as beneficial to the defense. Additionally, because the prosecutor's hypothetical came in rebuttal, defense counsel had no opportunity to counter it with argument of his own. His only hope of correcting the misimpression was through a timely objection and

19

admonition from the court. Under these circumstances, we can conceive of no reasonable tactical purpose for defense counsel's omission." (*Centeno*, at pp. 675-676.)

The same reasoning applies in this case in which the flag illustration argument also came during rebuttal. Defendant received ineffective assistance of counsel for lack of objection to the prosecutor's improper closing argument based on the partially drawn illustration of the United States flag.

## D.

### *Analysis of Prejudice*

The *Centeno* court reversed the judgment in what the Attorney General conceded was "a very close case." (60 Cal.4th at p. 677.) The case depended "almost entirely" on the victim's testimony that was problematic because the victim "repeatedly and emphatically" denied the defendant had committed the charged sex offenses before the victim changed her testimony and affirmed the sexual molestations. (*Id.* at p. 677.) As to many questions posed by the prosecution, the victim simply refused to answer. (*Ibid.*) The Supreme Court concluded that "[g]iven the closeness of the case and the lack of any corrective action, there is a reasonable probability that the prosecutor's argument caused one or more jurors to convict defendant based on a lesser standard than proof beyond a reasonable doubt." (*Ibid.*) Moreover, "[t]he prosecutor introduced further confusion by suggesting that it was 'reasonable' to believe that defendant was guilty," which "clearly diluted the People's burden." (*Id.* at p. 673.)

This case presents a much different situation than in *Centeno*. The prosecutor in this case did not argue it was "reasonable" to find defendant guilty in light of the evidence. (*Centeno, supra*, 60 Cal.4th at pp. 671–674, 676–677.) Instead, the prosecution in this case several times acknowledged having the burden to prove the charged offenses beyond a reasonable doubt. And as we have noted above, the trial court

20

gave the jury written instructions for deliberations that included a correct definition of the reasonable doubt standard. On this point, we note the *Centeno* court acknowledged the well-settled point that " '[w]hen argument runs counter to instructions given a jury, we will ordinarily conclude that the jury followed the latter and disregarded the former, for "[w]e presume that jurors treat the court's instructions as a statement of the law by a judge, and the prosecutor's comments as words spoken by an advocate in an attempt to persuade" ' " (*Centeno, supra*, 60 Cal.4th at pp. 676, quoting *People v. Osband* (1996) 13 Cal.4th 622, 717.) Consequently, we presume jurors heeded both the oral and written instructions given for deliberations on the reasonable doubt standard.

The state of the evidence in this case also stands in stark contrast to the "very close" case presented in *Centeno, supra*, 60 Cal.4th 659. Here, defendant did not contest the sufficiency of the evidence supporting his conviction of possessing a switchblade knife. Although he did argue the evidence was insufficient to convict of possession of the firearms and methamphetamine, the prosecution's case was very strong and there was no affirmative defense. The firearms and methamphetamine were found at the residence defendant gave as his residence address on Facebook in the month preceding the search by the police. On his Facebook account, defendant had posted photos and videos of some of the same guns seized during the search. Some of the guns were located in the same location at the residence as depicted in defendant's Facebook photos. Mail addressed to defendant was found at the residence. A derogatory message addressed to defendant in lipstick was found on the mirror in one of the bedrooms. The methamphetamine was found in the master bedroom.

Although defendant asserts he might have moved prior to the date of the search, the officers did not see him move items into his vehicle even though they repeatedly observed him working in the yard approximately a week prior to the search. In the yard

21

around the residence, firearms were found on top of a shed with a sign bearing defendant's alias. Thus, the evidence was very strong defendant lived at and claimed as his address the residence at which the firearms and methamphetamine were found. There is no reasonable a probability the result of trial would have been different if defense counsel had objected to the prosecutor's closing argument and requested that the jury be admonished.

## III

### *Duplicative Convictions for Possession of Each Firearm*

Defendant contends he may be convicted on only one count of section 29800, subdivision (a), for being a felon in possession of a firearm as to each firearm. The People concede 20 of defendant's 40 firearm convictions must be stricken because he possessed 20 firearms. We accept the concession.

The trial court's rationale for allowing two convictions for possession of the same gun appears to be that defendant had two prior felonies. Although the trial court stayed the sentences for the duplicative convictions under section 654, the duplicative convictions of section 29800, subdivision (a), cannot be affirmed.

Section 29800, subdivision (a), carries over without substantive change the offense previously defined at section 12021, subdivision (a)(1). "[F]ormer section 12021, subdivision (a), is now section 29800, subdivision (a), which became effective January 1, 2012. (Stats. 2010, ch. 711, § 6.) The Law Revision Commission Comments to section 29800 make clear that the provision was carried over 'without substantive change.' (Recommendation: Nonsubstantive Reorganization of Deadly Weapon Statutes (June 2009) 38 Cal. Law Revision Com. Rep. (2009) p. 758.)" (*People v. Correa* (2012) 54 Cal.4th 331, 334, fn. 1 (*Correa*).) "Former section 12021, subdivision (a)(1), made it a felony for a convicted felon to possess 'any firearm.' " (*Correa*, at p. 345.) Under

former section 12021, "a felon who possesses several firearms is more culpable than one who possesses a single weapon. The purpose of 'The Dangerous Weapons Control Law,' of which former section 12021 was a part, was to protect the public by denying firearms to felons, who are considered more likely to commit crimes with them. (*People v. Bell* (1989) 49 Cal.3d 502, 544 (*Bell*).) The Legislature has made it clear that the magnitude of a felon's culpability depends *on the number of weapons possessed*." (*Correa*, at p. 342, italics added.)

The corollary is a felon's culpability for possession of a single firearm is not doubled if the felon has two prior convictions. Because section 29800, subdivision (a), carries over without change the substantive provisions of former section 12021, subdivision (a)(1), that corollary applies here to bar defendant's second conviction for possession of the same firearm. Accordingly, we reverse defendant's convictions for 20 of defendant's 40 convictions of section 29800, subdivision (a).

## IV

### *Proposition 47*

Defendant contends Proposition 47 requires this court to reduce his felony conviction for possession of methamphetamine to a misdemeanor and remand for resentencing on this count. We reject the contention.

"On November 4, 2014, the voters enacted Proposition 47, the Safe Neighborhoods and Schools Act . . . , which went into effect the next day. (Cal. Const., art. II, § 10, subd. (a).)" (*Rivera*, *supra*, 233 Cal.App.4th at p. 1089.) Proposition 47 enacted section 1170.18. (*Ibid.*) Subdivision (a) of section 1170.18 provides that "[a] person currently serving a sentence for a conviction, whether by trial or plea, of a felony or felonies who would have been guilty of a misdemeanor under the act that added this section ('this act') had this act been in effect at the time of the offense *may petition for a*

*recall of sentence before the trial court that entered the judgment of conviction in his or her case to request resentencing* in accordance with Sections 11350, 11357, or 11377 of the Health and Safety Code, or Section 459.5, 473, 476a, 490.2, 496, or 666 of the Penal Code, as those sections have been amended or added by this act." (Italics added.)

As this court has previously held, section 1170.18 provides the sole means by which a defendant can seek resentencing under Proposition 47 and it requires a motion to recall filed in the trial court. "Defendant is limited to the statutory remedy of petitioning for recall of sentence in the trial court once his [or her] judgment is final, pursuant to . . . section 1170.18." (*People v. Noyan* (2014) 232 Cal.App.4th 657, 672 (*Noyan*).) Accordingly, we reject defendant's argument we should reduce his felony conviction for possession of methamphetamine to a misdemeanor under Proposition 47 in this appeal, case No. C077519.

### V

### *Trial Court Jurisdiction*

Defendant next argues if we decline to reduce his felony conviction for possession of methamphetamine to a misdemeanor in this appeal, we should reverse on grounds the trial court erred in refusing to grant him the same relief when he moved to have his sentence recalled. We disagree.

Defendant's motion to recall the sentence was made within 120 days of judgment and sentencing by the trial court but after the notice of appeal in this appeal, No. C077519 was filed.

Recently, this court determined the trial court lacks jurisdiction to recall a sentence for purposes of considering relief under Proposition 47 while the defendant has a currently pending appeal that challenges the same conviction. (*People v.*

24

*Scarbrough* (2015) 240 Cal.App.4th 916, 920 (*Scarbrough*).) In so holding, *Scarbrough* explained:

"Subject to limited exceptions, well-established law provides that the trial court is divested of jurisdiction once execution of a sentence has begun. (See *People v. Turrin* (2009) 176 Cal.App.4th 1200, 1204–1205.) And, '[t]he filing of a valid notice of appeal vests jurisdiction of the cause in the appellate court until determination of the appeal and issuance of the remittitur.' (*People v. Perez* (1979) 23 Cal.3d 545, 554; see *People v. Cunningham* (2001) 25 Cal.4th 926, 1044 [' "an appeal from an order in a criminal case removes the subject matter of that order from the jurisdiction of the trial court . . . ." '].) This rule protects the appellate court's jurisdiction by protecting the status quo so that an appeal is not rendered futile by alteration. (*People v. Alanis* (2008) 158 Cal.App.4th 1467, 1472, citing *Townsel v. Superior Court* (1999) 20 Cal.4th 1084, 1089, 86 Cal.Rptr.2d 602, 979 P.2d 963.)" (*Scarbrough, supra,* 240 Cal.App.4th at p. 923.)

Absent any direction or order from this court, the trial court was correct in finding it lacked jurisdiction to resentence defendant under section 1170.18 as to a conviction that is the subject of the present appeal. (*Scarbrough*, *supra*, 240 Cal.App.4th at p. 929.) Nonetheless, defendant may "petition[] for recall of sentence in the trial court once his [or her] judgment is final."[7] (*Noyan, supra*, 232 Cal.App.4th at p. 672; *Scarbrough*, at p. 930.)

---

[7] We recognize some defendants may appear to face a dilemma in having to elect between a trial court remedy under section 1170.18 or pursuing a remedy on direct appeal. We need not resolve the procedural conundrum in this case because defendant is entitled to seek relief under section 1170.18 as soon as this opinion becomes final. (*Noyan*, *supra*, 232 Cal.App.4th at p. 672.)

# VI

## *Presentence Custody Credits*

Defendant contends, and the People concede, he is entitled to an additional 351 days of presentence custody credit. Although defendant served 524 actual days in custody prior to sentencing, he was awarded only 173 days of credit because the trial court erroneously limited him to 33 percent credit. Defendant, however, was entitled to one-for-one credits. As the California Supreme Court has explained, "Today local prisoners may earn day-for-day credit without regard to their prior convictions. (See § 4019, subds. (b), (c) & (f), as amended by Stats. 2011, ch. 15, § 482.)" (*People v. Lara* (2012) 54 Cal.4th 896, 906, fn. 9.) Consequently, we order the trial court to credit defendant with a total of 524 presentence custody credits on remand.

# VII

## *Restitution Fines*

Finally, defendant argues the trial court erred in imposing a $10,500 restitution fine under section 1202.4, subdivision (b), and a $10,500 parole revocation fine under section 1202.45. We agree and order the fines to be reduced to $10,000 each.

As to the restitution fine, the People correctly note section 1202.4, subdivision (b)(1), limits the fine to $10,000. Subdivision (b)(1) of section 1202.4 provides in pertinent part that "[i]f the person is convicted of a felony, the fine shall not be . . . more than ten thousand dollars ($10,000)." Consequently, the trial court erred in imposing a $10,500 restitution fine.

The People, however, argue defendant forfeited the issue for failure to object to the $10,500 restitution fine in the trial court. We disagree. Imposition of a restitution fine in excess of statutory authority constitutes an error that may be corrected without prior objection. (*People v. Smith* (2001) 24 Cal.4th 849, 853 (*Smith*).)

26

The People also argue the "extra" $500 can be justified on the basis of the administrative fee allowed under subdivision (l) of section 1202.4. The trial court, however, did not impose the $500 above the statutory maximum of subdivision (b)(1) of section 1202.4 on the basis of an administrative fee. Instead, the trial court imposed the entire $10,500 fine on the basis of section 1202.4, subdivision (b). This court has previously admonished: "Although we recognize that a detailed recitation of all the fees, fines and penalties on the record may be tedious, California law does not authorize shortcuts. All fines and fees must be set forth in the abstract of judgment." (*People v. High* (2004) 119 Cal.App.4th 1192, 1200 (*High*).)

Here, the abstract of judgment does not mention subdivision (l) of section 1202.4. Subdivision (l) is a fee that "[*a*]*t its discretion*, the board of supervisors of a county may impose a fee to cover the actual administrative cost of collecting the restitution fine . . . ." (Italics added.) We decline to impute a discretionary fee not mentioned by the trial court. (*Smith*, *supra*, 24 Cal.4th at p. 853, *High*, *supra*, 119 Cal.App.4th at p. 1200.)

As to the parole revocation fine, the People concede the $10,500 parole revocation fine exceeded the statutory limit by $500 and should therefore be reduced to $10,000. We accept the concession. Under subdivision (b) of section 1202.45, "the court shall, at the time of imposing the restitution fine pursuant to subdivision (b) of Section 1202.4, assess an additional postrelease community supervision revocation restitution fine or mandatory supervision revocation restitution fine *in the same amount as that imposed pursuant to subdivision (b) of Section 1202.4* . . . ." (Italics added.) Because the restitution fine in section 1202.4, subdivision (b), is limited to $10,000, so too is the parole revocation fine limited to $10,000.

27

DISPOSITION

Defendant's convictions in counts 24 through 41, 43, and 44, of Penal Code section 29800, subdivision (a)(1), are reversed and the matter in case No. C077519 is remanded for resentencing. On remand, the trial court shall credit defendant with a total of 524 presentence custody credits. Also on remand, the trial court shall reduce defendant's restitution fine imposed under Penal Code section 1202.4 to $10,000 and his parole revocation fine imposed under Penal Code section 1202.45 to $10,000. In all other respects the judgments are affirmed.

_____/s/_____
HOCH, J.

We concur:


_____/s/_____
BLEASE, Acting P. J.


_____/s/_____
NICHOLSON, J.